Zena HALSTED, Plaintiff,

v.

Donna E. SHALALA, Defendant.

Civ. A. No. 93–90E.

United States District Court,
W.D. Pennsylvania.

Feb. 15, 1994.

Gerald Sullivan, Northwest Legal Services, Meadville, PA, for plaintiff.

John J. Trucilla, Asst. U.S. Atty., Erie, PA, for defendant.

### *OPINION*

COHILL, District Judge.

This case is before us on appeal from a final decision by the defendant, Secretary of Health and Human Services (the "Secretary"), denying Plaintiff Zena Halsted's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383(c). The parties have submitted cross motions for summary judgment. For the reasons stated below, we will grant plaintiff's motion for summary judgment and deny the defendant's motion. We find the plaintiff is disabled and remand to the Secretary for the purpose of awarding benefits.

## I. *PROCEDURAL HISTORY*

Ms. Halsted brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g), seeking judicial review of the Secretary's decision denying her claim for SSI.

Ms. Halsted applied for SSI on April 3, 1991, with a protective filing date of January 31, 1991, alleging that she was disabled since December 28, 1990 because of carpal tunnel syndrome. Tr. 68–71. Her application was denied initially and on reconsideration. Tr. 94–97, 121–123. On December 11, 1991, plaintiff requested a hearing (Tr. 124–125), and an Administrative Law Judge ("ALJ") conducted a *de novo* hearing on May 11, 1992. Tr. 35–66. On June 26, 1992, the ALJ rendered a decision adverse to Ms. Halsted. Tr. 12–25.

Ms. Halsted then requested review of the hearing decision by the Appeals Council on June 30, 1992. (Tr. 9–11.), which affirmed the ALJ's decision and found that the plaintiff was not disabled in a decision dated January 29, 1993. Tr. 5–6. The ALJ's determination ("ALJ Decision"), therefore, is the final decision of the Secretary and may be reviewed by this Court.

## II. *FACTS*

Ms. Halsted was born on September 21, 1970 and was twenty-one years old at the time of the administrative hearing. She graduated from high school, attending special education classes. Tr. 42, 53. Her abilities in reading, spelling and arithmetic are at a fourth grade level. Tr. 204. Ms. Halsted has a daughter who was six months old at the time of the administrative hearing. Tr. 44. She was receiving food stamps and public assistance at that time. Tr. 43. She does not have a driver's license. Tr. 43.

Ms. Halsted initially received outpatient treatment in 1975 when she was four years old for a developmental impairment and secondary emotional problems. Tr. 218. She received further outpatient counseling in 1977–78 for treatment of behavioral problems. Tr. 235–244.

Plaintiff was hospitalized for two weeks in February 1989 for major depression. Tr. 169–183. The record indicates that she was sexually abused by her father between the ages of nine and seventeen. Tr. 174, 184–185. She recently reported her father's abuse to the authorities, and he was convicted and sent to prison. Tr. 174, 184–185. She was experiencing suicidal thoughts at this time. Tr. 184–185.

Ms. Halsted received outpatient counseling from March until July 1989. Tr. 188, 245–251. A diagnosis of adjustment disorder with mixed emotional features was made in April 1989. Tr. 192.

Her past work experience consists of completely unsuccessful stints as a custodial worker-dishwasher at a restaurant in 1989 and 1990 and as a dishwasher in another restaurant in early 1991, for a total of approximately eight months' work experience. Tr. 39. Ms. Halsted testified that she stopped working because she suffered from carpal tunnel syndrome. Tr. 39, 68. However, it is clear from her testimony (Tr. 37–51) and the record that her impairments are mainly intellectual and emotional.

On June 15, 1991, Charles H. Steinmeyer, Ph.D., a psychologist, evaluated Ms. Halsted at the request of the Disability Determination Service. Tr. 199. He reported that Halsted may over-react in crisis situations. Tr. 201. Through testing, Halsted achieved a full-scale I.Q. and verbal score of 74, and a performance I.Q. score of 76. Tr. 204. Dr. Steinmeyer found no evidence of an acute psychiatric disorder but reported Halsted may be vulnerable to adjustment disorders during times of crisis. This was probably due to her borderline level of intellectual functioning. Tr. 205.

Dr. Steinmeyer found Ms. Halsted was able to understand, retain and follow simple oral instructions. Tr. 205. She was totally unable to follow written instructions accurately. Tr. 205. Her ability to sustain attention to perform simple repetitive tasks was very limited. Tr. 205. He reported that she appeared to have a short-term memory deficit. Tr. 202. She became confused under pressure and reacted to conflict by walking away and withdrawing. Tr. 198.

Dr. Steinmeyer found Ms. Halsted could relate to others, including co-workers but was easily rattled by supervisory criticism. Tr. 197, 198, 205. Her ability to tolerate day-to-day work pressures such as production demands and work schedules was compromised, and she was slow in her pace in performing activities within a schedule. Tr. 197, 205. He reported Ms. Halsted could perform reasonably well when there was no pressure for production but she would not do well if rushed. Tr. 205.

Subsequent to the examination by Dr. Steinmeyer, John Topalanchick, a certified rehabilitation and vocational evaluation specialist, (Tr. 206–211) reported that Ronald Refice, Ph.D., found, after a review of Ms. Halsted's Social Security file which contained Dr. Steinmeyer's findings and the findings of several other medical examiners, that she met the requirements of Section 12.05c of the Listings of Impairments for Mental Retardation. Tr. 206–207.

At the administrative hearing, Ms. Halsted testified that she was currently living in a trailer with her boyfriend and infant daughter and that she was able to care for her child independently. Tr. 43–45. Recalling her brief work experience, Ms. Halsted said that she found the jobs [she had held] to be stressful. Tr. 40–41, 51. She became nervous when criticized by her employers and would react by crying and would become unable to work. Tr. 41, 48, 50–51, 63–65. She was not able to keep up with her work, had difficulty remembering things, and made mistakes which required her to repeat her work. Tr. 48–50.

The record contains a letter from one of Ms. Halsted's former employers, Eunice G. (Jerry) Schmude. Schmude wrote that she believed Ms. Halsted would not be able to work anywhere and that her problems would not ever be overcome. Tr. 264. Schmude wrote that she kept Halsted on the payroll when she could not afford to out of sympathy for Halsted's background of sexual abuse and emotional problems. Tr. 264.

Martin Friedmann, M.D., a psychiatrist, testified as a medical advisor at the hearing. Tr. 51–55. Dr. Friedmann was under contract to the Social Security Administration.

Tr. 52. He had not examined the plaintiff but had reviewed her medical records and observed her testimony at the hearing. Tr. 51. Dr. Friedmann reported that his review of the record revealed that Ms. Halsted had borderline intellectual functioning, and a history of depression with an anxiety component. Tr. 53. Ms. Halsted was able to follow simple instructions, relate to others, had some difficulty with the pressures of work and did not perform well under pressure. Tr. 53. He thought that Ms. Halsted might be able to follow more than simple instructions if they were verbal and she could practice the activity. Tr. 55.

Jay Arthur, a vocational expert, ("VE") reviewed the medical evidence and observed the testimony of Ms. Halsted and Dr. Friedmann. Tr. 55. The ALJ presented Arthur with a "hypothetical individual" who could understand, remember and follow simple instructions, would need to be given more complicated instructions verbally and would need to practice them, could relate to others, had difficulty with the pressures of work, did not do well if pressured and could sustain attention to perform simple repetitive tasks. Tr. 57–58.

In response to the hypothetical, the VE responded that such an individual could work as a laundry worker, such as a folder or bagger because these positions weren't "production demand occupations". Tr. 59. The VE estimated there were 100,000 such jobs in the nation and only 150 in the immediate area. Tr. 59.

To challenge the adequacy of the initial hypothetical question, upon re-examination Ms. Halsted testified that she was criticized by a supervisor every day when she was working and that she would invariably react to criticism by becoming upset, crying and making mistakes in her work. Tr. 64. Ms. Halsted also testified that whenever a supervisor observed her work she would become nervous and make mistakes. Tr. 64.

Plaintiff's attorney then posed a second hypothetical question to the VE, basing the question on the further testimony given by Ms. Halsted. Tr. 65. In response to question about a hypothetical person who re-

sponded to all supervisory criticism by becoming emotional which would result in the person making mistakes and being criticized again, the VE testified that such a response would preclude a person from sustaining employment, even in the laundry worker position he had identified earlier. Tr. 65.

Based on the testimony and the record, the ALJ, in his June 26, 1992 decision, determined that Halsted was not disabled and had the residual functional capacity to work except for an impaired ability to follow instructions, work under the pressure of production demands and close critical supervision. Tr. 19–20.

### III. STANDARD OF REVIEW

■ The standard of review in social security disability cases is whether substantial evidence exists in the record to support the Secretary's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir.1989). Additionally, the Secretary's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979).

To be eligible for social security disability benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir.1986).

The Secretary has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a substantial impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520.

■ The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment. *Dobrowolsky v. Califano,* 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Secretary to show that the claimant can engage in alternative substantial gainful activity. *Id.*

### IV. DISCUSSION

■ The issue in this case is whether the ALJ's determination that while Ms. Halsted is impaired, she is not disabled, and is capable of working, was supported by substantial evidence. We believe, after a review of the record, that there is substantial evidence showing that Ms. Halsted is, in fact, disabled and incapable of working.

The standard for disability under the Act requires that a claimant have physical or mental impairments which are of such severity that she is not only unable to perform her previous work but cannot, considering her age, education and work experience, engage in any kind of substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1381a.

A review of the record reveals that the Secretary erred in the 5–step analysis used to evaluate the disabled status of Ms. Halsted. The ALJ determined correctly, in the first two steps of the analysis, that Ms. Halsted is not currently engaged in any substantial gainful activity and is severely impaired. Tr. 19.

In the third step of the analysis, however, the ALJ incorrectly determined that Halsted did not have a substantial impairment that met or equaled the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1.

In doing so, the ALJ ignored without explanation the findings of one examiner, Dr. Refice, who found that Ms. Halsted's impairments did meet or equal the criteria in Sec-

tion 12.05 C of the Listing of Impairments for Mental Retardation. Tr. 206.

The criteria of the mental retardation listing (12.05 C) is:

C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R., pt. 404, subpt. P., app. 1, 12.05 C.

Where verbal, performance and full-scale I.Q.s are provided, the Secretary must consider the lowest of these scores in conjunction with listing 12.05. (20 C.F.R., pt. 404, subpt. p, app. 1, 12.00 D). I.Q. scores are thought to have an error of measurement of approximately five points. *Diagnostic and Statistical Manual of Mental Disorders,* 28 (Third Edition—Revised 1987). Therefore, Ms. Halsted's lowest I.Q. score of 74 would have a range of error of 69 to 79, bringing her score within the criteria of listing 12.05.

Ms. Halsted has been diagnosed as having an adjustment disorder with mixed emotional features (Tr. 192) which has proven in her previous work experience to be a significant work-related limitation. Plaintiff arguably meets or equals the two criteria for an automatic finding of disability in listing 12.05 C and is entitled to disability benefits.

Alternatively, under the fourth step of the analysis, plaintiff's impairments have been found severe enough to prevent her from performing her past relevant work. Tr. 20, 58.

In order to receive benefits, then, plaintiff must under the fifth and final step of the analysis, show that she cannot perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520.

During the hearing, the VE was given two different hypothetical questions to consider, one by the ALJ and one by plaintiff. The ALJ's question did not correctly describe plaintiff's limitations in that the hypothetical person had the ability, among other things, to sustain the attention required to perform simple repetitive tasks. Tr. 57–58. It has been reported that Ms. Halsted's ability to sustain the necessary attention to perform simple repetitive tasks is severely limited. Tr. 205. The ALJ's hypothetical question was, consequently, deficient and any response to it cannot be considered substantial evidence. *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987); *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984); *Sharp v. Bowen,* 705 F.Supp. 1111, 1121 (W.D.Pa.1989).

In response to this inaccurate hypothetical question, the VE was able to identify only one job that plaintiff would be able to perform, that of laundry worker. Tr. 58–59. In the VE's opinion, these jobs did not exist in significant numbers. Tr. 59.

In response to an additional hypothetical question posed by plaintiff, and more accurately based on plaintiff's response to supervision and criticism, the VE was unable to name any jobs which the plaintiff could perform. Tr. 65.

The Secretary has therefore failed to meet her burden of finding any work which exists in the national economy, in light of plaintiff's age, education, work experience and residual functional capacity.

■ Benefits may be awarded through a District Court summary judgment order instead of remanding for a new hearing when the administrative record has been fully developed and when substantial evidence on the record as a whole indicates the plaintiff is disabled and entitled to benefits. *Gilliland v. Heckler,* 786 F.2d 178, 184–185 (3d Cir. 1986); *Podedworny v. Harris,* 745 F.2d 210, 221–223 (3d Cir.1984).

We find that the Secretary did not give adequate consideration to plaintiff's medical records and testimony and that her decision to deny plaintiff's claims for SSI was not supported by substantial evidence. Ms. Halsted's abilities in reading, spelling and arithmetic are at a fourth grade level. Her dual disabilities of borderline intellectual functioning and emotional problems preclude her from performing any of the jobs mentally retarded individuals can usually perform. While some employers could accommodate her low I.Q. by closely supervising her work, Ms. Halsted's customary reaction to supervi-

sion and criticism—tears, confusion and making many mistakes—preclude her from performing these jobs, as well.

We will therefore grant the plaintiff's Motion for Summary Judgment, deny the defendant's Motion for Summary Judgment, and remand to the Secretary for the purpose of awarding benefits.

An appropriate order will be issued.