**Terrance L. BENDT, Plaintiff,**

v.

**Shirley CHATER, Commissioner of Social Security, Defendant.**

**Civil No. 3–95–CV–10128.**

United States District Court, S.D. Iowa, Davenport Division.

July 23, 1996.

John A. Bowman, Wells, Bowman & Smith, Davenport, IA, for Plaintiff.

Gary L. Hayward, Assistant U.S. Attorney, Des Moines, IA, for Defendant.

## ORDER

LONGSTAFF, District Judge.

Plaintiff seeks review of the Commissioner of Social Security's decision denying him Social Security benefits. Claimant asserts he is entitled to benefits under both Title II of the Social Security Act (Disability Insurance Benefits) and Title XVI of the Social Security Act (Supplemental Security Income). Pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), this Court may review the final decision of the Secretary.

## I. PROCEDURAL HISTORY

Terrance L. Bendt, currently age 34, filed his applications for disability insurance benefits and SSI benefits on June 16, 1993, alleging disability since January 1, 1980. (Tr. 32). These applications were initially denied on February 25, 1994. (Tr. 127). On reconsideration, Bendt was again denied benefits on March 31, 1994. (Tr. 125).

Pursuant to a timely request, a hearing was held on January 30, 1995, before an Administrative Law Judge (ALJ). (Tr. 32). The ALJ found that Bendt was not under a disability as defined by the Act. (Tr. 43). On August 3, 1995, the Appeals Council denied a request for review. (Tr. 3–4). This action for review of the Commissioner's decision was commenced September 19, 1995.

## II. FINDINGS OF THE SECRETARY

The ALJ made the following findings. (Tr. 40–42). The claimant met the special earnings requirements of the Act on January 1, 1980, the date he alleges he became unable to work, and continued to meet them through June 30, 1992, but not thereafter. From January of 1987 to April of 1987 and from June of 1987 through December of 1987 Bendt worked as a dishwasher and porter, earning an average of $658.93 per month. From June of 1989 to March of 1991 Bendt worked washing cars, earning an average of $570.87 per month. The ALJ also found that his work activity involved significant physical or mental activities for pay of profit.

The ALJ determined that Bendt's work activities during the alleged disability period constitute substantial gainful activity within the meaning of the regulations. Bendt has not been able to engage in substantial gainful activity for any continuous period of at least 12 months through February of 1991. Bendt was not under a disability as defined in the Social Security Act ("the Act"), at any time through February of 1991 due to the performance of substantial gainful activity. Subsequent to February of 1991, Bendt has not engaged in work activity which was found to be substantial gainful activity.

The ALJ further concluded that Bendt has a history of Hepatitis B, a history of a fracture to the fourth and fifth metacarpals of the right hand, borderline intellectual functioning, a history of depressive complaints; a history of an inguinal hernia and obesity. However, he does not have any impairment or combination of impairments with signs, symptoms or laboratory findings sufficient to meet or equal the requirements for any listed impairment found in Appendix 1, Subpart P, Regulations No. 4.

The ALJ determined that Bendt's allegations of disability were not found credible. Also, his allegations concerning the persistence and intensity of symptoms were found credible only to the degree reflected in the residual functional capacity. Bendt had the following residual functional capacity ("RFC"). He can lift 50 pounds maximum and 25 pounds repeatedly. He can stand and sit for four hours at a time. He can walk for 3 hours at a time. Bendt must avoid repetitive bending, stooping, and twisting. He can occasionally squat, kneel, crawl, and climb but should avoid ropes, ladders and scaffolds. He must avoid reaching above shoulder level. Bendt is able to perform only simple, routine, repetitive work not requiring close attention to detail or use of independent judgment. He can have occasional contact with co-workers and/or supervisors.

The claimant was determined to be able to perform his past relevant work as an auto washer, commercial cleaner, grounds keeper, materials handler, and dishwasher because these jobs did not require the performance of work related activities precluded by his limitations. Bendt is a younger aged individual with a 12th grade special education.

The ALJ concluded that considering his age, education, past relevant work experience and residual functional capacity, other jobs have existed as well in significant numbers in the local and national economies that he has been capable of performing such as warehouse worker and industrial cleaner. Finally, the ALJ concluded that Bendt was not under a disability as defined in the Act at any time through the date of the ALJ's determination.

## III. DISCUSSION OF APPLICABLE LAW

A court must affirm the decision of the Secretary if substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is that which a reasonable mind might accept as adequate to support the Secretary's conclusion." *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir.1991). A court may not reverse merely because substantial evidence would have supported an opposite decision. *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir.1992).

Bendt argues that the ALJ's conclusion is deficient in two ways. First, Bendt asserts that the ALJ erred when he failed to explicitly determine whether his impairments are severe. Also, Bendt argues that the ALJ erred in determining that he did not have a substantial impairment that met or equaled

the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1.

### A. Determination of Severity of Impairments

■ Bendt argues that the ALJ erred in failing to make a finding regarding whether his impairments are severe. The Social Security Act sets out five steps for the ALJ to use when reviewing a claimant's request for disability. 20 C.F.R. § 404.1520; *Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 2024–25, 90 L.Ed.2d 462 (1986).

First, the ALJ must determine whether a claimant is currently engaged in substantial gainful activity. Second, the ALJ must determine whether the claimant is severely impaired. Third, the ALJ must determine whether the claimant has a substantial impairment that meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1. Fourth, the ALJ must determine whether a claimant's impairments keep him from doing past relevant work. Fifth, if an ALJ concludes that a claimant cannot return to his past relevant work, then the burden of proof shifts to the Secretary to prove that jobs existed in the national economy which plaintiff could perform. *Evans v. Shalala,* 21 F.3d 832, 835 (8th Cir.1994).

While the ALJ did not make any explicit findings regarding whether Bendt's impairments were severe, he did make findings concerning the nature of his impairments.[1] Moreover, the ALJ went on to analyze the remaining three steps in the determination of whether Bendt was disabled under the Act. Therefore, although the Court notes that the ALJ failed to make explicit determinations regarding the severity of Bendt's impairments in accordance with the applicable regulations governing the Act, this error did not affect the outcome of the case. *See Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where, as here, the deficiency probably had no practical effect on the outcome of the case."). As a result, the Court will not reverse the ALJ's determination on this basis.

### B. Impairment equaling the listing requirement

■ Bendt next contends, contrary to the finding of the ALJ, that he meets the criteria in Section 12.05(C) of the Listing of Impairments for Mental Retardation and Autism. If Bendt is determined to have met the criteria for this listing, he is presumptively disabled and vocational factors (ability to perform post or other work) will not be considered in the determination of whether he is disabled. *Cockerham v. Sullivan,* 895 F.2d 492, 495 (8th Cir.1990).

The criteria for the mental retardation and autism listing (12.05 C) is:

> A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R., pt. 404, subpt. P., app. 1, 12.05 C. Bendt must prove both that he has an I.Q. within the requisite range and that he has an impairment imposing additional limitations in order to meet his burden. *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir.1990) (citing *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)). Where verbal, performance and full-scale I.Q.s are provided, the Secretary must consider the lowest of these scores in conjunction with listing 12.05. 20 C.F.R., pt. 404, subpt. p., app. 1, 12.00 D.; *Cockerham,* 895 at 495 n. 5 (citations omitted).

Bendt had a verbal I.Q. of 79, a performance I.Q. of 75, and a full scale I.Q. of 76. (Tr. 277). Therefore, Bendt's lowest I.Q. score, his performance I.Q. of 75 must be used. However, Bendt argues that the standard errors of measurement place him within Section 12.05(C). *Halsted v. Shalala,* 862 F.Supp. 86, 90 (W.D.Pa.1994) (finding that an I.Q. score of 74, with an error range of 69 to

---

1. The ALJ determined that:

   Mr. Bendt has had a history of Hepatitis B, a history of a fracture to the fourth and fifth metacarpals of the right hand, borderline intellectual functioning, a history of depressive complaints; a history of an inguinal hernia and obesity.

   (Tr. 41).

79, was within the criteria of listing for mental retardation); *Young v. Shalala*, No. 94–3011–CV–S–5, 1995 WL 904826 (W.D.Mo. May 31, 1995) (determining that an I.Q. score of 71, with an error range of 66 to 76, was within the criteria of listing for mental retardation). Using an error of measurement of five points [2], Bendt's score of 75 would have a range of error of 70 to 80. However, the regulations do not explicitly mandate the consideration of standard errors of measurement in determining whether an individual satisfies a limitation criteria.

▮ Incorporating a 5 point measurement error into a claimant's I.Q. test results would effectively expand the requisite I.Q. under listing 12.05(C) from test scores of 60 to 70 to test scores of 60 to 75. The Court concludes that incorporation of a 5 point error of measurement would alter the range of I.Q.s which satisfy the Listing of Impairments for Mental Retardation and Autism in contradiction of the federal regulations interpreting the Act. *See Cockerham v. Sullivan*, 895 F.2d at 495–96 (holding that an ALJ's finding that a claimant's I.Q. score of 71 was not within the range of 60–69 was supported by substantial evidence on the record as a whole).

Dr. Murphy, a consulting psychologist, stated that Bendt "put forth a good effort on all administered tasks and, thus, the results of this evaluation are considered a valid estimate of his current level of functioning." [3] (Tr. 277). The record also indicates that Dr. Murphy stated that Bendt's "cognitive deficiencies may limit his employability to some degree, but not significantly." (Tr. 279).

Murphy also provided that "[a]t a minimum, [Bendt] should be able to understand, remember, and carry out short, simple instructions." (Tr. 279).

In addition, Dr. Wright, a consulting psychologist, stated that despite Bendt's cognitive restrictions, he "appears quite able to sustain sufficient concentration and attention to perform a range of simple, repetitive, and routine cognitive activity without great difficulty." (Tr. 282). Based on the foregoing, the Court concludes that the ALJ's determination that Bendt failed to meet his burden of establishing that his I.Q. score of 75 meets or equals the required I.Q. range specified in the first prong of Section 12.05(C) is supported by substantial evidence on the record as a whole.[4] *See Cockerham*, 895 F.2d at 496 (holding that the ALJ's determination that the claimant was not presumptively disabled was supported by substantial evidence on the record as a whole where doctors testified that the claimant had an I.Q. of above 69); *Selders*, 914 F.2d at 619 (determining that the claimant failed to establish that his I.Q. score of 70 was the equivalent of a score in the range of 60–69 where he failed to present diagnostic evidence that his score was the substantial equivalent to a score in the 60–69 range).

C. Finding of No Disability Supported by Substantial Evidence on the Record as a Whole

▮ There is no indication in the record that Bendt has a physical impairment imposing significant work-related limitations other

---

**2.** "I.Q. scores are thought to have an error of measurement of approximately five points." *Halsted v. Shalala*, 862 F.Supp. 86, 90 (W.D.Pa. 1994) (citing Diagnostic and Statistical Manual of Mental Disorders, 28 (3d Ed.Rev.1987)). It should also be noted that Bendt's score of 75 has a 95% confidence range of 67–83. (Tr. 277).

**3.** When Bendt was tested in January of 1979 his verbal I.Q. was 77, his performance I.Q. was 78, and his full scale I.Q. was 76. (Tr. 300). As indicated earlier, in addition to a 75, his other scores were a 76 and a 79. (Tr. 277). These scores provide some indication that his I.Q. test score of a 75 was not the equivalent of a 70. *See Selders v. Sullivan*, 914 F.2d 614, 619–20 (5th Cir.1990) (determining that a claimant's other

scores of 72 and 76 provided some indication that his score of 70 was not the equivalent of a score in the range of 60–69).

**4.** As noted earlier, Section 12.05(C) of the Listing of Impairments for Mental Retardation and Autism requires a valid verbal, performance, or full scale I.Q. of 60 through 70 *and* a physical or other mental impairment imposing additional and significant work-related limitation of function. Therefore, because Bendt does not have a I.Q. within the specified range, he fails to establish that he has a substantial impairment that meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1. Based on this determination, it is unnecessary for the Court to analyze the second prong of Section 12.05(C).

than those recognized by the ALJ. The ALJ noted that Bendt had fractured his right hand. (Tr. 41). However, approximately six weeks after Bendt fractured his hand, his treating physician noted that his hand looked good and he was able to increase his activity. (Tr. 264).

There is some indication that Bendt has mental limitations. The ALJ noted that Bendt has borderline intellectual functioning and a history of depressive complaints. (Tr. 41). On September 14, 1992, Dr. Bhasker, a treating physician of Bendt, noted that Bendt had borderline mental intelligence, an intermittent impulse disorder, and explosive disorder. (Tr. 301). He recommended vocational rehabilitation. (Tr. 301).

Dr. Bhasker evaluated plaintiff three times in 1993 and reported his findings in a January 10, 1994 letter. (Tr. 274). Dr. Bhasker repeated his diagnosis from September 14, 1992, but he noted that Bendt had failed to participate in the vocational rehabilitation. (Tr. 274). Dr. Bhasker ordered Bendt to take Mellaril and lithium. (Tr. 274). Bendt failed to attend an appointment with Dr. Bhasker on November 17, 1993. (Tr. 274).

Dr. Murphy, a consulting psychologist, evaluated Bendt on February 15, 1994. (Tr. 276). He concluded that Bendt has borderline intelligence. (Tr. 279). He also stated that his cognitive deficiencies may limit his employability to some degree, but not significantly and that, at a minimum, Bendt should be able to understand, remember, and carry out short, simple instructions. (Tr. 279). However, he also stated that his anger dyscontrol "would seem to limit his ability to interact appropriately with others in the workplace." (Tr. 279). In addition, he noted that Bendt may have difficulties responding appropriately or using good judgment when under stress or when experiencing changes in the workplace. (Tr. 279).

Bendt has engaged in work activity since June 1986. At the time of the administrative hearing, he was working as a busboy/dishwasher. Work performed during any period in which Bendt alleges that he was under a disability may demonstrate an ability to engage in substantial gainful activity. *See Naber v. Shalala,* 22 F.3d 186, 188

(8th Cir.1994). In addition, the ALJ noted that Bendt's activities of cleaning, bowling, working on cars, mowing the yard, taking out the trash, driving, visiting friends, reading the newspaper, and grocery shopping are activities inconsistent with the allegations of disability.

In establishing Bendt's residual functional capacity, the ALJ stated that Bendt was able to perform only simple, routine, repetitive work not requiring close attention to detail or use of independent judgment. (Tr. 42). This determination is consistent with Dr. Murphy's conclusion that Bendt's cognitive deficiencies may limit his employability to some degree, but not significantly and that, at a minimum, Bendt should be able to understand, remember, and carry out short, simple instructions. (Tr. 279). It is also consistent with his past work history.

The ALJ also found that Bendt should have only occasional contact with the public and occasional contact with co-workers and/or supervisors. (Tr. 42). The Court notes that Dr. Murphy, a consulting psychologist, stated that Bendt's anger dyscontrol "would seem to limit his ability to interact appropriately with others in the workplace" and that Bendt may have difficulties responding appropriately or using good judgment when under stress or when experiencing changes in the workplace. (Tr. 279). Dr. Murphy's conclusions are consistent with Dr. Bhasker indicating that Bendt had intermittent impulse disorder and explosive disorder and he recommended of vocational rehabilitation. (Tr. 301).

In addition, Dr. Wright, a consulting psychologist, determined that Bendt had moderate restrictions of function socially, and that he would have difficulty working in an environment that required frequent, stressful contact with others. (Tr. 282). Wright also stated that Bendt appears to be able to sustain at least superficial, short lived social interactions with others when he is motivated to do so. (Tr. 282). Dr. Carole Kazmierski, another consulting psychologist, noted that Bendt was "markedly limited" in his ability to interact appropriately with the general public. (Tr. 285). She also stated that

Bendt's low frustration tolerance and poor impulse control ill suit him for work with the public. (Tr. 286). Finally, Kazmierski stated that Bendt is able to perform repetitive tasks in a setting with "minimal contact with others." (Tr. 286).

The ALJ's limitation that Bendt may have occasional contact with the public and occasional contact with co-workers and/or supervisors is consistent with Dr. Murphy's conclusion that Bendt is limited in his ability to interact appropriately with others in the workplace. It is also consistent with the findings of Dr. Wright, a consulting psychologist, who determined that Bendt had moderate restrictions of function socially, and that he would have difficulty working in an environment that required frequent, stressful contact with others.

On the other hand, Dr. Kazmierski, a consulting psychologist, noted that Bendt was "markedly limited" in his ability to interact appropriately with the general public and recommended that he should have minimal contact with others in the workplace. This diagnosis is inconsistent with the ALJ's determination of residual functional capacity. However, a court may not reverse the Secretary's decision "merely because substantial evidence would have supported an opposite decision." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir.1992); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993) ("Although these pieces of evidence, if accepted as credible, might have proved sufficient to support a finding of disability, we are not allowed to substitute our opinion for that of the ALJ, who enjoys a closer position to the testimony in support of an application."); *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984). In light of the opinions rendered by Dr. Murphy and Dr. Wright, the fact that Dr. Kazmierski's opinion conflicted with the ALJ's determination does not mean his decision is not supported by substantial evidence. *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996) ("The fact that two inconsistent conclusions may be drawn does not prevent an administrative agency's findings from being supported by substantial evidence.") (citing *Baker v. Secretary of Health and Human Services*, 955 F.2d 552, 554 (8th Cir.1992)).

In addition to the evidence provided by the doctors, the ALJ also noted that Bendt failed to enroll in the vocational rehabilitation recommended by Dr. Bhasker and failed to show up for his last appointment with Dr. Bhasker. (Tr. 274). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995). Also, Bendt's past work history and his daily activities provide some indication that he is not disabled.

The Court determines, based on the foregoing and especially the opinions of Dr. Murphy and Dr. Wright, that there is substantial evidence on the record as a whole to support the ALJ's finding that Bendt is able to have occasional contact with co-workers and/or supervisors. As a result, the Court concludes that there is substantial evidence in the record to support the ALJ's determination that Bendt's impairments have not prevented him from performing his past relevant work.

## IV. CONCLUSION

There is substantial evidence in the record to support the decision of the Commissioner. IT IS ORDERED that the decision of the Secretary is affirmed.