**Paulette LAWSON, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 97–4250–C–W–1.

United States District Court, W.D. Missouri, Central Division.

Sept. 29, 1998.

Dewey L. Crepeau, Columbia, MO, for plaintiff.

Jerry L. Short, Ass't. U.S. Attorney, Kansas City, MO, for defendant.

## ORDER

WHIPPLE, District Judge.

Pending before the Court is Claimant Paulette Lawson's motion for summary judgment and the Defendant Commissioner of Social Security's brief in support of the administrative decision denying Lawson's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g). Lawson complains that the Commissioner's administrative law judge (ALJ): (1) erred in relying on the Vocational Expert's (VE) testimony because it contradicted the Dictionary of Occupational Titles (DOT) without an adequate explanation for the contradiction; and (2) erred in concluding that the Claimant did not have a disability as defined by 20 CFR pt. 404, subpt. P, app. 1, § 12.05(C).

## I. FACTS

The complete facts and arguments are presented in the parties' briefs, and, consequently, will be duplicated here only to the extent necessary. At the time of the hearing, Lawson was a 33 year-old female. Lawson has an eleventh-grade education in special education, but she cannot read a newspaper and her ability to add and subtract is not good. She has past work experience as a maid and she formerly worked at a shoe factory, but the ALJ concluded that she had no past relevant work experience and that she has not engaged in substantial gainful activity at any time pertinent. Lawson alleges disability due to back pain and other aliments. On July 26, 1996, the ALJ issued a decision denying benefits to Lawson finding that she is not entitled to a period of disability or disability insurance benefits under §§ 216(i) and 223, respectively, of the Social Security Act.

## II. STANDARD OF REVIEW

The Court's review is limited to determining if the Commissioner applied the correct standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *see also Hutsell v. Sullivan,* 892 F.2d 747, 748–49 (8th Cir.1989). The review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision. *Cline v. Sullivan,* 939 F.2d 560, 564 (8th Cir.1991). The Court also takes into account whatever in the record fairly detracts from its weight. *Id.* Resolution of factual conflicts, however, is not for the Court to decide. *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir.1987).

In reviewing whether the ALJ properly applied the law and appropriately assessed the claimant's application, the Court reviews whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(1)(a) (defining "disability" for purposes of social security) and 1382a(a)(3)(A) (defining "disability" for purposes of SSI). To form the basis for "disability," an impairment must result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically accepted clinical and laboratory techniques. *Lannie v. Shalala,* 51 F.3d 160, 163 (8th Cir.1995).

In steps one through four of the process, a claimant has the burden of proof to demonstrate that his or her impairment rises to the level of a disability. *See Timmerman v. Weinberger,* 510 F.2d 439, 442 (8th Cir.1975); *Lannie,* 51 F.3d at 163. The first step in the process is to determine whether the individual is engaging in "substantial gainful activity." *Lannie,* 51 F.3d at 163. If the individual is not engaging in substantial gainful activity, then the second step is to ascertain whether the

individual's impairment (or combination of impairments) is severe. *Id.* If the impairment is not severe, the claim is denied. Where the impairment is severe, it is compared to the Listing of Impairments (the "Listing"),[1] which are considered as a matter of law to be so severe as to preclude substantial gainful activity. *Id.* If the severity of the impairment meets or equals that of a listed impairment, the claim is allowed. *Id.* When a severe impairment does not meet or equal the Listings, however, the Commissioner must determine the individual's "residual functional capacity" (RFC). *Id.* If, given the individual's RFC, he or she can meet the demands of past work, the claim is denied. *Id.* Until this fifth step, the burden is on the individual to prove that he or she is disabled. However, if the individual is not able to perform his or her past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the individual can perform. *Id.; see also* 20 C.F.R. § 404.1566 (defining how the Commissioner determines whether jobs exist in the national economy in substantial numbers). In a case of solely exertional impairments,[2] the Commissioner may consult the Medical–Vocational Guidelines[3] to meet his or her burden of proving the availability of jobs in the national economy that the claimant can perform. *Hall v. Chater,* 62 F.3d 220, 224 (8th Cir.1995). If,

however, the claimant also has a significant nonexertional impairment,[4] the Commissioner must use vocational expert testimony to meet the burden of showing the existence of jobs in the national economy that the claimant is capable of performing. *Foreman,* 122 F.3d at 25.[5] If such jobs do not exist in significant numbers, the claim is allowed. *Hall,* 62 F.3d at 224.

When the ALJ assesses a claimant's subjective complaints relating to nonexertional impairments, such as pain, the claimant must prove, on the record as a whole, that the disabling impairment results from a medically determinable physical or mental impairment. However, direct medical evidence of the cause and effect relationship between the impairment and the degree of the claimant's subjective complaints need not be produced. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). Accordingly, when making a disability determination, the adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *Id.* The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints. *Id.* Thus, the adjudicator must consider the claimant's prior work record and observations by third parties and physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and

1. The Listing of Impairments is found at 20 C.F.R. § 404, subpt. P, app. 1.

2. Exertional impairments are those "affecting the ability to perform physical labor." *Foreman v. Callahan,* 122 F.3d 24, 25 (8th Cir. 1997). They generally relate to the strength requirements of a job. *See id.*

3. The Medical–Vocational Guidelines are found at 20 C.F.R. pt. 404, subpt. P, app. 2. The Guidelines are "fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Foreman,* 122 F.3d at 25.

4. In this context, "significant" refers to whether the claimant's nonexertional impairment or impairments preclude the claimant

from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. *Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir.1997). In other words, an ALJ may rely on the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines. *Id.*

5. Both obesity and pain are examples of nonexertional impairments that might significantly restrict a claimant's ability to perform the full range of sedentary work. *See, e.g., Lucy,* 113 F.3d at 908 (obesity); *Reynolds v. Chater,* 82 F.3d 254, 258 (8th Cir.1996) (pain).

intensity of the subjective infirmity; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.*

In evaluating the *Polaski* factors, the Eighth Circuit has advised that the mere fact that working may cause pain or discomfort does not mandate a finding of disability. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir.1996). An ALJ may discount a claimant's subjective complaints of pain, however, only if there are inconsistencies in the record as a whole. *Id.* Relevant here are the claimant's daily activities, demeanor, whether he or she has sought treatment, and the objective medical evidence. *Id.* Furthermore, where proof of a disability depends substantially upon subjective evidence, such as pain, a credibility determination is a critical factor in the Commissioner's decision. *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir.1991) (distinguishing *Smith v. Heckler*, 735 F.2d 312 (8th Cir.1984)). Consequently, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Id.* (citations omitted). Failure to make credibility determinations in such cases is reversible error. *See id.*

### III. ANALYSIS

The Court has reviewed the parties' briefs, the ALJ's decision, the hearing transcripts, and the additional medical and documentary evidence. As a result of that searching review, the Court agrees with the decision of the ALJ. Below, the Court specifically addresses each of the Claimant's arguments.

### A. Reliance on the Testimony of a Vocational Expert When it Contradicts the Dictionary of Occupational Titles

Lawson argues that the ALJ erred in relying on the VE's testimony that jobs existed in the national economy which she could perform. She contends that the VE's testimony conflicted with the DOT, and that the VE did not rebut the DOT's classifications. Therefore, Lawson asserts that the VE's testimony does not constitute substantial evidence upon which the ALJ could base her decision.

At Lawson's hearing, the VE responded to the ALJ's hypothetical by testifying that Lawson would be capable of performing such jobs as photo finisher, hand packer, and laundry folder. (R. at 51–52.) The VE did not refer to the DOT in reaching his decision, nor did the VE refer to the corresponding DOT job titles when he identified the jobs which Lawson could perform. The ALJ ultimately concluded that Lawson was capable of performing these jobs. (R. at 22.) According to the DOT all of these jobs, or their equivalent listing in the DOT, require a Level 1 Language Development. The DOT indicates that Level 1 Language Development requires a reading rate of 95–120 words a minute and the ability to recognize 2,500 two and three syllable words along with the ability to print simple sentences. The ALJ, however, concluded that Lawson was functionally illiterate. (R. at 21.) Lawson asserts that a person who is functionally illiterate does not have the job skills necessary to perform jobs which require a Level 1 Language Development, and that, therefore, the VE's testimony conflicts with the DOT.

The Circuits are split as to whether, and to what extent, the DOT should control over contradictory VE testimony.[6] The

6. *Conn v. Secretary*, 51 F.3d 607, 610 (6th Cir.1995) (finding that ALJ may rely solely on a VE's testimony even if it directly contradicts DOT); *Logan v. Shalala*, 882 F.Supp. 755, 764 (C.D.Ill.1995) (finding DOT's requirements not controlling); *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir.1995) (holding

ALJ may rely on VE contradicting DOT but only insofar as the record contains "persuasive evidence" to support the deviation); *but see Porch v. Chater*, 115 F.3d 567, 572 (8th Cir.1997) ("When expert testimony conflicts with the DOT, and DOT classifications are not rebutted, the DOT controls."); *Montgomery v.*

Eighth Circuit has held that when a VE's testimony conflicts with the DOT, the DOT controls. *See Porch v. Chater*, 115 F.3d 567, 572 (8th Cir.1997) ("When expert testimony conflicts with the DOT, and DOT classifications are not rebutted, the DOT controls."); *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir.1995) (same); *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir.1995) ("when expert testimony conflicts with the DOT, the DOT controls"). The Eighth Circuit's rule, however, is not absolute. Where the VE acknowledges a claimant's limitations and testifies as to the existence of jobs which have lower requirements than those listed in the DOT, it is not error for the ALJ to rely on such testimony. *Hughes v. Chater*, 931 F.Supp. 625, 627–28 (N.D.Iowa 1996) (citing *Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir.1996)).

The claimant in *Carlson* raised a similar claim to Lawson's. Although the VE did not refer to a specific job in the DOT, the corresponding job in the DOT had contradictory requirements from those presented to the VE in the ALJ's hypothetical.

> The ALJ found that although Carlson could not lift more than five pounds frequently and fifteen pounds occasionally, she could perform the jobs of charge account clerk, telephone surveyor, telephone quotation clerk, and order clerk in the food business. The DOT classifies the job of telephone surveyor as light work and the other three jobs as sedentary. Carlson alleges that the finding that she can perform the job of telephone surveyor ignores her inability to lift more than fifteen pounds, as the DOT defines light work as requiring lifting up to twenty pounds. Our recent decision in *Jones v. Chater*, 72 F.3d 81 (8th Cir.1995), is dispositive of this issue. In *Jones* we recognized that a DOT definition of a particular job represents only the "approximate maximum re-

quirements for each position, rather than [the] range." *Id.* at 82. The vocational expert recognized this fact in his testimony, noting that although most telephone surveyor jobs were sedentary, some required light exertion, and further noting Carlson's strength limitations. Accordingly, we find no error.

*Id.* at 871. In *Jones* the ALJ concluded that claimant could only lift 15 pounds maximum and 10 pounds repeatedly. The VE found that the claimant could perform the jobs of hand packager, production assembler, telephone answering service operator, or food order clerk. The DOT, however, characterized hand packager and production assembler as medium work (requiring lifting of 20 to 50 pounds) and light work (requiring lifting of up to 20 pounds) respectively. The Court held that since the VE "specifically limited his opinion to reflect sedentary work only (requiring lifting of up to 10 pounds occasionally), his testimony was a perfectly acceptable basis for the ALJ's conclusions." *Jones*, 72 F.3d at 82 (citations omitted).

In this case, the ALJ's hypothetical asked the VE to assume that the individual was functionally illiterate. (R. at 51.) Therefore, the Court can assume that the VE specifically limited his opinion to reflect appropriate jobs. *Whitehouse v. Sullivan*, 949 F.2d 1005, 1006 (8th Cir.1991) ("the ALJ specifically asked the expert to assume a job applicant with [plaintiff's] age, education, work experience, and residual functional capacity ... the ALJ could properly assume that the expert framed his answer based on the factors the ALJ told him to take into account."). Moreover, Lawson's counsel specifically asked the VE, "So all of these positions named takes into account that Ms. Lawson has a very low level in skill of reading and writing?" The VE responded, "Yes." (R. at

---

*Chater*, 69 F.3d 273, 276 (8th Cir.1995) (same); *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir.1995) ("when expert testimony conflicts with the DOT, the DOT controls"); *Tom v. Heckler*, 779 F.2d 1250, 1257 n. 12 (7th Cir.

1985) (holding discrepancies should be resolved in favor of the DOT, particularly when the ALJ "simply appears to have made a mistake" by relying on the VE testimony over an inconsistent description in the DOT).

54.) It is clear from the record that the VE considered the fact that Lawson was functionally illiterate and that he did not believe that the jobs referred to required literacy skills. The Court finds that because the VE properly limited his opinion in accord with *Jones* and *Carlson*, the ALJ did not err in relying on it.

Finally, although the Court feels constrained by Eighth Circuit precedent, it does not believe that the VE's testimony was truly contradicted by the DOT in this case. Every job in the DOT has a Language Development level. Level 1 is the lowest Language Development level used in the DOT. A decision holding that illiterate individuals could not perform Level 1 jobs would mean that illiteracy was a *per se* disability under the DOT. Illiterate people would not qualify to work any job listed in the DOT. The Court believes that such a holding is illogical and would directly contradict the Social Security regulations. The regulations indicate that Lawson is not disabled simply because she is functionally illiterate. 20 CFR pt. 404, subpt. P, app. 2 § 202.16 (stating that a younger individual, who is illiterate or unable to communicate in English, and who is unskilled or has no prior work experience is not disabled).

Presented with the identical issue the United States District Court for the Western District of Virginia noted:

> [T]o hold that the DOT "definitional requirements" are binding on the ALJ would lead to the absurd result of rendering anyone who is illiterate unqualified and unable to perform any of the jobs in the DOT. A common sense approach to the problem illustrates this point. Before his arm injury, [claimant] was an electrician's helper which under the DOT requires a language level of two, the same as a flagger. Clearly, illiteracy does not in and of itself disable [claimant] from performing any number of jobs in the national economy. The faceless bureaucrats who formulated these "definitional requirements" have clearly evidenced their fear of the spectre of the obvious by propagating illogical and unrealistic criteria for the most basic of vocations.

*Warf v. Shalala,* 844 F.Supp. 285, 288–90 (W.D.Va.1994). The court in *Warf* concluded that the VE's testimony was not invalidated notwithstanding the DOT's "literacy requirement." This Court agrees with the Western District of Virginia, that it is illogical to conclude that the DOT's apparent "literacy requirement" trumps the testimony of a VE. The Court notes, however, that even if one concludes that the VE's testimony was contradicted by the DOT in this case, that the VE adequately explained and accounted for any contradiction in light of *Jones* and *Carlson.* Consequently, the Court concludes that the ALJ's decision was adequately supported by substantial evidence on the record as a whole.

## B. Failure of the ALJ to Consider Lawson Impaired under Listing 12.05(C)

Lawson also argues that the ALJ failed in not finding her impaired under 20 CFR pt. 404, subpt. P, appl, § 12.05(C). Section 12.05(C) states that an individual is disabled based on mental retardation if the individual has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."

The ALJ concluded that Lawson has a verbal IQ of 74, a performance IQ of 71 and a full scale IQ of 72. (R. at 19.) Lawson claims that this conclusion is not supported by substantial evidence on the record as a whole. Apparently, Lawson bases this assertion on Dr. Wilcox's finding that Lawson's IQ "lies between 68 and 76 ..." (R. at 155.) Lawson also refers to the following quote by Dr. Wilcox to argue that her IQ is 70 or below, "it is reasonable to assume that the more realistic appraisal of her intelligence is at the lower level ..." (*Id.*) Lawson, however, has taken this sentence fragment out of context. In his

948

report, Dr Wilcox stated "Given her sparse work history and social experience, it is reasonable to assume that the more realistic appraisal of her intelligence is at the lower level within the general classification of mild mental retardation." (*Id.*) The Court finds that Dr. Wilcox's reference to "lower level" did not refer to the range of Lawson's IQ, but to the "lower level" of mild mental retardation.

Dr. Wilcox's own report supports this conclusion. Dr. Wilcox, himself, administered a Wechsler Adult Intelligence Scale–Revised (WAIS–R) test to Lawson. The results are referred to in his report and the recording form is attached to his report. Based on this test, Dr. Wilcox concluded that Lawson had a Verbal IQ of 74, Performance IQ of 71, and Full Scale IQ of 72. (R. at 155–56). Accordingly, the Court concludes that the ALJ's findings were supported by substantial evidence on the record as a whole.

■ Lawson also argues that IQ scores have an error of measurement of approximately five points. Therefore, Lawson contends that her IQ would have a range of error from 67 to 77, and that this places her within the range of § 12.05(C). District courts have split over this issue. *See Bendt v. Chater,* 940 F.Supp. 1427, 1431 (S.D.Iowa 1996) (rejecting Lawson's argument, IQ of 75 not within range of § 12.05(C)); *Halsted v. Shalala,* 862 F.Supp. 86, 89–90 (W.D.Pa.1994) (finding that an IQ of 74 was within the range of § 12.05(C)); *Young v. Shalala,* No. 94–3011–CV–S–5, 1995 WL 904826 (W.D.Mo. May 31, 1995) (finding that an IQ of 71 was within the range of § 12.05(C)). Obviously, the Court is not bound by any of these decisions. The Court, however, finds the reasoning in *Bendt,* and its reliance on *Cockerham v. Sullivan,* 895 F.2d 492, 495 (8th Cir.1990), to be most persuasive. In *Bendt,* the district court noted that "[i]ncorporating a 5 point measurement error into a claimant's I.Q. test results would effectively expand the requisite I.Q. under listing 12.05(C) from test scores

of 60 to 70 to test scores of 60 to 75." *Bendt,* 940 F.Supp. at 1431. The court concluded that this would alter the range of I.Q.'s which satisfy the Listing of Impairments for Mental Retardation and Autism in contradiction of the federal regulations interpreting the Act, and the court cited *Cockerham,* 895 F.2d at 495–96 (holding that an ALJ's finding that a claimant's I.Q. score of 71 was not within the range of 60–69 was supported by substantial evidence on the record as a whole). Consequently, the Court finds that the ALJ's finding that Lawson did not qualify under § 12.05(C) was supported by substantial evidence on the record as a whole.

## ORDER

For the reasons given above, it is hereby ORDERED that Lawson's motion for summary judgment is DENIED. It is further

ORDERED that the Defendant's motion for summary judgment is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED.

IT IS SO ORDERED.