Donna L. COLAVITO

v.

Kenneth S. APFEL, Commissioner of
the Social Security Administration.

Civil Action No. 99–854.

United States District Court,
E.D. Pennsylvania.

Oct. 21, 1999.

Meyer Silver, Silver & Silver, Ardmore, PA, for Plaintiff.

William B. Reeser, Social Sec. Admin., Region III, Rafael Melendez, Social Sec. Admin., Office of General Counsel, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are plaintiff Donna L. Colavito's ("Plaintiff") Objections to the Magistrate Judge's Report and Recommendation. For the reasons set forth below, the court will approve and adopt the Report and Recommendation.

## I. BACKGROUND

This is a judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act.

Plaintiff was born on October 20, 1948 and was forty-eight years old at the time of the hearing before the Administrative Law Judge on June 27, 1996. (R. at 35 & 40.) Plaintiff's education terminated in the tenth grade. (R. at 40–41.) Plaintiff testified that she attended special education classes and that she had not worked in the fifteen years prior to the hearing.[1] (R. at 40–42.)

Plaintiff asserted that she suffers from depression, heart palpitations and back conditions including arthritis and degenerative disc disease.[2] (R. at 44.) On Sep-

---

1. There is no evidence in the record to substantiate Plaintiff's claim that she attended special education classes. (R. at 21 & 41.)

2. Plaintiff was first treated for depression in 1994. (R. at 46–47 & 130–31.) In June 1995, Plaintiff began treatment at the Life Guidance Center where she saw a therapist every other week. (R. at 46.) Plaintiff testified to no adverse side effects from the medication she takes for her depression and, in fact, stated that it calms her. (R. at 55.)

Plaintiff was also treated by her primary care physician, Dr. Dan Teano, M.D., who concluded that Plaintiff suffered from depression and had previously suffered from questionable mild degenerative joint disease of the cervical spine. (R. at 130–31.) Dr. Teano treated Plaintiff for chest pain and found that she demonstrated normal ventricular size and function, no significant arrhythmia, no cardiac chamber enlargement, no evidence of significant mitral valve prolapse, and minimal mitral insufficiency. (R. at 130–31 & 180–81.) Plaintiff's treating cardiologist, Dr. Jo-

tember 19, 1994, Plaintiff filed for SSI, alleging a disability that began on May 18, 1989. (R. at 17–18, 68 & 114) This claim was denied initially and again upon reconsideration. On June 27, 1996, Plaintiff testified at a hearing before Administrative Law Judge Hazel C. Strauss (the "ALJ"). A vocational expert ("VE") also testified at Plaintiff's hearing. (R. at 56–62.) On September 19, 1997, the ALJ found that Plaintiff had not been under a disability as defined by the Social Security Act at any time through the date of the decision. (R. at 27.) In her decision denying Plaintiff benefits, the ALJ found that Plaintiff could perform simple one-to-two step jobs that are low stress and do not deal with the public, including: janitress and hotel maid or packer at the light and medium exertional levels.[3] (R. at 26–27.) On July 27, 1999, United States Magistrate Judge Peter B. Scuderi ("Magistrate Judge") issued

a Report and Recommendation finding that substantial evidence existed to support the ALJ's findings. On August 9, 1999, Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation.

## II. *LEGAL STANDARD*

 Judicial review of administrative decisions is limited. The court may not reweigh the evidence. The court determines only whether the Commissioner's decision is supported by substantial evidence. *Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190–91 (3d Cir.1986) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kangas v. Bowen,* 823 F.2d 775, 777 (3d Cir.1987). Findings of fact made by an ALJ must be accepted as conclusive,

---

nathon Felsher, M.D., determined that her heart palpitations were benign and that she had "only a very minimal heart problem which is causing no real problems." (R. at 128–29.)

3. The ALJ also made the following Findings of Fact and Conclusions of Law:
 1. The claimant has not engaged in substantial gainful activity since September 19, 1994.
 2. The medical evidence establishes that the claimant has severe anxiety and depression, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
 3. The claimant's subjective complaints are credible only to the extent that they are supported by the evidence.
 4. The claimant has the residual functional capacity to perform the nonexertional requirements of work except the jobs must be simple one-to-two-step jobs which do not involve dealing with the public and low stress level jobs. There are no exertional limitations (20 C.F.R. § 416.945).
 5. The claimant has no past relevant work.
 6. The claimant is 49 years old, which is defined as a younger individual (20 C.F.R. § 416.943).
 7. The claimant has a limited education (20 C.F.R. § 416.964).

8. The claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work (20 C.F.R. § 416.968).
9. If the claimant's nonexertional limitations did not significantly compromise her ability to perform work at all exertional levels, Section 204.00, Appendix 2, Subpart P, Regulations No. 4 indicates that a finding of not disabled would be appropriate. If her capacity to work at all levels were significantly compromised, the remaining work which she would functionally be capable of performing would be considered in combination with her age, education, and work experience to determine whether a work adjustment could be made.
10. Considering the types of work which the claimant is still functionally capable of performing in combination with her age, education and work experience, she can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy....
11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(f)).

(R. at 26–27.)

provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). In reviewing a decision of the ALJ, the court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981) (remanding case back to Secretary of Health and Human Services where ALJ failed to explain implicit rejection of expert medical testimony that was probative and supportive of disability claimant's position). The Third Circuit has recognized that "there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." *Id.* at 706. The court reviews *de novo* the portions of the Magistrate Judge's Report and Recommendation to which objections are filed. 28 U.S.C. § 636(b)(1)(C).

## III. *DISCUSSION*

To receive disability insurance benefits, a claimant must show that he or she is unable to:

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.... [The impairment must be so severe that the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (d)(2)(A).

An ALJ considering a claim for disability insurance benefits undertakes the five-step sequential evaluation of disability claims set forth in 20 C.F.R. § 404.1520. Under Step One, if the claimant is working and the work constitutes substantial gainful activity, the ALJ must find that the claimant is not disabled regardless of medical condition, age, education or work experience. 20 C.F.R. § 404.1520(b). Under Step Two, the ALJ determines whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activity. 20 C.F.R. § 404.1520(c). Under Step Three, the ALJ must determine whether the claimant's impairment meets or equals the criteria for a listed impairment as set forth in 20 C.F.R. pt. 404, subpt. 4, Appendix 1. 20 C.F.R. § 404.1520(d). Under Step Four, if the ALJ finds that the claimant retains the residual functional capacity to perform past relevant work, the claimant will not be found to be disabled. 20 C.F.R. § 404.1520(e). Under Step Five, other factors, including the claimant's residual functional capacity, age, education and past work experience must be considered to determine if the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(f).

Plaintiff asserts two principal grounds on which the Magistrate Judge's and the ALJ's findings are not supported by substantial evidence. First, Plaintiff asserts that the Magistrate Judge improperly rejected the medical opinions of Dr. Misook Soh, M.D., Plaintiff's treating psychiatrist. Second, Plaintiff argues that the VE's hypothetical did not include all of her impairments. The court will review each argument separately.

### A. *Dr. Soh's Opinion*

■ Plaintiff's principal objection revolves around evidence of the purported findings of a person identified as Dr. Misook Soh, M.D., and claimed by Plaintiff to be one of her treating physicians. Dr. Soh did not testify at the hearing.

Documents claimed by Plaintiff's counsel at the hearing to be the reports of Dr. Soh were submitted in support of Plaintiff's claim. (R. at 155, 216 & 233.) The ALJ was skeptical about the genuineness of certain of the reports that were submitted, and her observations in that regard are set

forth in her decision.[4] (R. at 21–22.) In addition to her concerns regarding the authenticity of the reports, the ALJ was not satisfied with the content of the documents because some were essentially "check off" forms filled in by someone that may, or may not have been, Dr. Soh. (R. at 216.) Some of Plaintiff's records were filled in by her social worker, Virginia W. Dryer, and signed off by Dr. Soh. (R. at 151, 186–192 & 219–224.) Under the regulations, a social worker's opinion is not listed as an "acceptable medical source." *See* 20 C.F.R. § 416.913(a) (listing acceptable medical sources); *Lee v. Sullivan* 945 F.2d 687, 691 (4th Cir.1991)(finding that chiropractor is not "acceptable medical source" under 20 C.F.R. § 416.913(a), and therefore is not qualified to make medical assessment).

The ALJ provided Plaintiff's counsel at the hearing with an opportunity to supplement Plaintiff's deficient medical records with the original medical and laboratory notes. (R. at 22 fn.1 & 55.) Such treatment records are customarily expected and are provided to support cursory forms that often do little more than inform the reader of pre-printed terms of a medical diagnosis. *Cf.* 20 C.F.R. § 404.1527(d)(2)(stating that to receive controlling weight, treating source's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with the other substantial evidence"); § 416.927(d)(2)(same); *Santise vs. Schweiker,* 676 F.2d 925, 932–933 (3d Cir.1982)(recognizing authority of Secretary of Health and Human Services to "establish regulations governing determinations of disability" and "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits")(internal quotations omitted); *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d

Cir.1993)(finding that forms requiring physician only to check boxes or fill in blanks are "weak evidence at best" and that when such forms are unaccompanied by thorough written reports, "their reliability is suspect")(internal quotations omitted). Plaintiff's counsel at the hearing accepted the ALJ's offer to supply Plaintiff's medical records, but failed to do so. Substitute counsel, who is Plaintiff's current counsel before the court and represented Plaintiff before the Appeals Council, also failed to supply the requested documentation. Indeed, even throughout the proceedings in this court, the material has not been provided. The court agrees with the United States Magistrate Judge that the ALJ, as well as the Appeals Council, were wholly justified in not giving the weight to Plaintiff's medical documents that Plaintiff believes they deserve. *See Matullo v. Bowen,* 926 F.2d 240, 245 (3d Cir.1990)(recognizing that court may accept credibility findings of ALJ).

■ Plaintiff also objects on the ground that the record was not fully developed as is required when benefits are denied. The Federal Regulations provide that before a determination is made that a claimant is not disabled, the Commissioner should insure that the claimant's complete medical history has been developed. 20 C.F.R. § 416.912(d). Those regulations provide that the complete medical history are records of the claimant's medical sources for the 12 months or more preceding the month in which the claimant's application is filed. *Id.* If the evidence before the Commissioner is insufficient, he is to attempt to secure additional evidence to determine whether a claimant is disabled. 20 C.F.R. § 416.927(c)(3). The Commissioner is to request additional records, recontact treating sources, ask the claimant for more information or undergo a consultive examination. *Id.* Plaintiff's counsel contends that the ALJ failed to complete

---

4. The ALJ found that the "check-off" medical assessment forms purportedly submitted by Dr. Soh were not credible, not consistent and not substantiated by treatment records. (R. at 21–22.)

the record as required by the Federal Regulations. *See* 20 C.F.R. § 404.1512(e)(1) & (f)(stating that "[w]e will seek additional evidence or clarification from your medical source when the report from your medical source ... does not contain all the necessary information" and that "every reasonable effort" will be made to obtain evidence from medical sources). However, it is plain that the ALJ did all that she could to have the record completed and that it was Plaintiff who failed to furnish the necessary information. The opportunity that the ALJ furnished Plaintiff's counsel to strengthen the credibility of Plaintiff's case was not a failure of the tribunal to complete the record.

A review of the record in this case demonstrates that the record was sufficiently clear and complete for the ALJ to render a decision regarding Plaintiff's disability. The ALJ went to considerable trouble to assure that a complete record was before her. (Rep. & Recomm. at 19 n. 21 (observing that ALJ left record open for two weeks after administrative hearing to give Plaintiff extra time to submit treatment notes).) Further, the ALJ sent Plaintiff for three consultive medical status examinations in accordance with the regulations. (R. at 19–21.) The examinations covered a span of two years, and coupled with the other information before the ALJ, furnished more than sufficient information for the ALJ to decide the claim. Thus, Plaintiff's objection on this ground is without merit.

### B. *The ALJ's Hypothetical*

■ Plaintiff also objects that the content of the hypothetical question presented at the hearing was incorrect. The court has examined the record and concludes that based upon the entire record before the ALJ, the hypothetical question presented to the VE was well within the acceptable range for such questions. *See Podedworny v. Harris* 745 F.2d 210, 218 (3d Cir.1984)(noting that ALJ will tailor hypothetical to simulate plaintiff's limitations and abilities, and ask whether suit-

able job exists for plaintiff in national economy). Testimony of a VE constitutes substantial evidence for purposes of judicial review where a hypothetical question considers all of a claimant's impairments that are supported by the medical record. *See Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987) (stating that "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence"). Hypothetical questions need only include the factors that are supported by objective medical evidence contained in the record. *Id.* at 1271. It is not necessary for the ALJ to include facts that are supported by a claimant's subjective testimony only. *Id.*

■ In this case, the hypothetical question demonstrates that the ALJ took into consideration the credible factors in the record that were necessary for the VE to render an opinion. (R. at 57–63.) The reference in that opinion and in the ALJ's findings relating to light or middle exertional limitations, as well as facts in evidence concerning Plaintiff and a description of the various vocational opportunities available in the national and regional economy, make it clear that the hypothetical question was in accordance with the necessary legal standard. Thus, Plaintiff's objection on this ground is without merit.

### IV. *CONCLUSION*

Based upon the foregoing reasons, the Magistrate Judge's Report and Recommendation shall be approved and adopted.

An appropriate Order follows.

### *ORDER*

AND NOW, TO WIT, this day of October, 1999, upon consideration of plaintiff Donna L. Colavito's and defendant Kenneth S. Apfel, Commissioner of the Social Security Administration's cross-motions for summary judgment, and after careful review of the Report and Recommendation

of United States Magistrate Judge Peter B. Scuderi and the Objections thereto, IT IS ORDERED that:

1. the Report and Recommendation is APPROVED and ADOPTED;

2. plaintiff Donna L. Colavito's motion for summary judgment is DENIED; and

3. defendant Kenneth S. Apfel, Commissioner of the Social Security Administration's motion for summary judgment is GRANTED. Judgment is entered in favor of defendant Kenneth S. Apfel, Commissioner of the Social Security Administration and against plaintiff Donna L. Colavito.

## *REPORT AND RECOMMENDATION*

SCUDERI, United States Magistrate Judge.

This action was brought pursuant to 42 U.S.C. § 1383(c)(3) to review the final decision of the Commissioner of Social Security ("Commissioner"), denying plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381–1383f. The parties have filed cross motions for summary judgment.

## I. *PROCEDURAL HISTORY:*

Plaintiff filed an application for SSI benefits on September 19, 1994. Plaintiff alleges that she is disabled as a result of a Mitral Valve Prolapse, Anxiety disorder, Depression, and back conditions including Arthritis and Degenerative Disc Disease. (Tr. 17, 18, 68–71, 114); Def.'s Brief at 1. The initial application for benefits and reconsideration were denied. (Tr. 72–75, 78–80). On April 26, 1995, plaintiff filed a timely request for a hearing before an Administrative Law Judge ("A.L.J."). (Tr.

81–82). The hearing was held on June 27, 1996 at which plaintiff, represented by counsel, appeared and testified on her own behalf. (Tr. 35–67). Others testifying at the hearing were Margaret Preno, a vocational expert, and Richard Mozitis, a friend of plaintiff. (Tr. 35–67). The A.L.J. concluded that plaintiff suffered from severe impairments of Anxiety and Depression. (Tr. 23). On September 19, 1997, the A.L.J. issued a decision in which he concluded that plaintiff was not disabled. (Tr. 17–27). Specifically, at step five of the sequential evaluation process, the A.L.J. found that plaintiff could perform the following jobs that involve simple one-to-two step jobs, are low stress and do not deal with the public: janitoress (light and medium exertional level), hotel maid (light and medium exertional level), or a packer (light and medium exertional level). (Tr. 26–27). The Appeals Council denied plaintiff's request for review on February 5, 1999, thereby making the A.L.J.'s decision the final decision of the Commissioner. (Tr. 4–5). Plaintiff then filed a complaint with this court seeking judicial review of the decision denying her claim for benefits.

## II. *STANDARD OF REVIEW:*

A claimant is considered disabled under the Social Security Act when she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a). Further, "the claimant's impairment must be severe resulting in the claimant's inability to do her previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 416.905(a). A five step sequential evaluation described in 20 C.F.R. § 416.920[1] is

---

1. These steps are as follows:

 1. If you are working and the work you do is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience. 20 C.F.R. § 416.920(b).

2. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. 20 C.F.R. § 416.920(c).

used to evaluate claims for social security benefits. The initial burden of proving disability rests solely on the claimant. 20 C.F.R. § 416.912. A claimant can satisfy this burden by showing an inability to perform former work tasks. Once this showing is made the burden shifts to the Commissioner who must then show that the claimant, given her age, education and work experience, has the ability to perform specific jobs that exist in the economy. *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979).

Judicial review of the Commissioner's final decision is limited, and this court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir.1989); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir.1984). "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. *Richardson v. Perales*, 402 U.S. 389, 407, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It consists of more than a scintilla of evidence but may be somewhat less than a preponderance of the evidence. *See Cotter v. Harris*, 642 F.2d 700 (3d Cir.1981).

Despite the deference to administrative decisions implied by this standard, the court retains a responsibility to scrutinize the entire record and to reverse and remand if the Commissioner's decision is not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence can only be considered as supporting evidence in relationship to all other evidence in the record.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983).

In coming to a decision, it is the A.L.J.'s responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *Richardson*, 402 U.S. at 399, 91 S.Ct. 1420. Accordingly, where the A.L.J. is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent advice. *See Brewster v. Heckler*, 786 F.2d 581 (3d Cir.1986).

### III. *DISCUSSION:*

Plaintiff claims that the Commissioner's decision that she was not disabled is not supported by substantial evidence. Specifically, plaintiff asserts that, the A.L.J.'s conclusion that plaintiff retained the residual functional capacity to perform light and medium work as a janitor, maid or a packer, the A.L.J. (A) failed to properly evaluate the medical opinions of plaintiff's treating psychiatrist, Dr. Misook Soh, M.D., her consultive examiner, Dr. William Fowler, M.D., and medical assessments completed by her social worker Virginia Dreyer, M.S.W., and apparently signed by Dr. Soh., (Tr. 186, 219, 216); (B) erred in concluding that plaintiff's degenerative joint disease and/or arthritis was not a medically-determinable severe impairment; (C) relied on a hypothetical question that did not reflect all impairments supported by the record; and (D) erred in failing to find that plaintiff meets the requirements of Listing 12.05(C) for mental retardation based on her I.Q. test score of seventy-two (72).

3. If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience. 20 C.F.R. § 416.920(d).
4. If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled. 20 C.F.R. § 416.920(e).
5. If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled. 20 C.F.R. § 416.920(f).

For the reasons that follow, I find that substantial evidence supports the A.L.J.'s conclusions. Therefore, I will recommend that plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the Commissioner's decision be affirmed.

## 1. MEDICAL HISTORY

At the time of her administrative hearing, plaintiff was forty-eight (48) years old.[2] (Tr. 40). Plaintiff completed up to the ninth grade[3] in high school by attending special education classes and had not worked in the fifteen years prior to the A.L.J. hearing. (Tr. 40–42). Plaintiff is currently being treated with the medications Zoloft, Inderal and Naprosyn.[4]

Progress notes made by plaintiff's treating primary care physician, Dan Teano, M.D., document plaintiff's complaints of chest pain. (Tr. 158–59). On April, 29, 1994, Dr. Teano sent plaintiff for an echocardiogram[5] which ultimately showed normal ventricular[6] size and function, no cardiac[7] chamber enlargement, minimal mitral[8] insufficiency, and no evidence of significant mitral valve prolapse.[9] (Tr. 130–31, 180). Plaintiff wore a Holter monitor for twenty-three hours and thirty-three minutes to evaluate her heart.[10] (Tr. 181). The results of the Holter monitor, dated March 3, 1994, were essentially normal with no significant arrhythmia demonstrated.[11] (Tr. 181).

On November 30, 1994, plaintiff's treating cardiologist, Jonathon Felsher, M.D., examined plaintiff and assured her that her heart palpitations were benign. (Tr. 128). He noted that her echocardiogram and electrocardiogram were normal and that plaintiff had no mitral valve problems. (Tr. 128). Dr. Felsher concluded that "the patient has only a very minimal heart problem which is causing no real problems." (Tr. 129).

Dr. Dan Teano examined plaintiff again on December 5, 1994. (Tr. 130–31). He reported that plaintiff had complained of depression and sinus problems during her last visit, (Tr. 130–31), and noted that plaintiff had previously suffered from questionable mild degenerative joint disease of the cervical spine. (Tr. 130). On

2. Plaintiff is classified as a "younger person" under 20 C.F.R. § 416.963(b), which means that the Social Security Administration generally does not consider that the claimant's age will seriously affect the claimant's ability to adapt to a new work situation.

3. The disability report says plaintiff quit in the tenth grade, however when asked at the administrative hearing what level of schooling she had achieved, plaintiff was unsure. Plaintiff also claimed she was in special education classes, but there are no records to support her claim. (Tr. 41).

4. Zoloft is indicated for the treatment of depression. *Physician's Desk Reference*, ("PDR") (51st Ed.1997) 2051–52. Inderal is indicated for the management of cardiac arrhythmias (a variation from the normal rhythm of the heartbeat). *PDR* at 2834–36. Naprosyn is a nonsteroidal anti-inflammatory drug indicated for osteoarthritis. *PDR* at 2277–80.

5. Echocardiography is a method of graphically recording the position and motion of the heart walls or the internal structures of the heart and neighboring tissue by the echo obtained from beams of ultrasonic waves directed through the chest wall. *Dorland's Illustrated Medical Dictionary*, 525 (28th ed.1994).

6. Ventricle is a small cavity, such as one of the several cavities of the brain, or one of the lower chambers in the heart. *Dorland's* at 1815.

7. Cardiac means pertaining to the heart. *Dorland's* at 267.

8. Mitral pertains to the mitral or bicuspid valve. *Dorland's* at 1047.

9. Prolapse is the falling down, or sinking, of a part or viscus. *Dorland's* at 1360.

10. A Holter monitor (ambulatory ECM m.) is a portable continuous electrocardiographic recorder, typically monitoring two channels for twenty-four hours; used to detect the frequency and duration of cardiac rhythm disturbances. *Dorland's* at 1052.

11. Arrhythmia is any variation from the normal rhythm of the heartbeat. *Dorland's* at 121.

examination, plaintiff's heart had a regular rate and rhythm, and her upper extremity sensation and strength were intact bilaterally (Tr. 131). Based on his physical examination, Dr. Teano concluded that plaintiff suffered from mitral valve prolapse, chronic sinusitis,[12] and depression. (Tr. 131).

On March 17, 1995, Peter J. McCusker, Ed.D, performed a consultative mental examination for the Social Security Administration. (Tr. 136–38). Dr. McCusker noted that plaintiff ambulated without difficulty and that there was no evidence of obvious physical impairment. (Tr. 137). Plaintiff's thoughts were goal directed; she evidenced no signs of hallucinatory, delusional, or self-destructive behavior; and she showed no evidence of a thought disorder. (Tr. 137). Memory and concentration testing led Dr. McCusker to conclude that plaintiff was not putting forth adequate effort. (Tr. 137). Dr. McCusker concluded that plaintiff was mild to moderately anxious and "very much" lacking in self-confidence. (Tr. 138). He determined that plaintiff could understand, retain, and follow simple instructions; perform simple, repetitive tasks; tolerate day to day work pressures within a supportive environment; perform commonplace activities of daily living, and manage her funds since she had been doing so since the 1970s. (Tr. 138). Dr. McCusker diagnosed plaintiff with Generalized Anxiety Disorder and found plaintiff's prognosis to be "very guarded." (Tr. 138). He also found that plaintiff required ongoing emotional support and should be considered for psychotropic[13] medication. (Tr. 138).

On June 9, 1995, a mental health evaluation was performed by Misook Soh, M.D., of Life Guidance Services. (Tr. 155). Dr. Soh noted that plaintiff came appropriately dressed and groomed, her speech was clear, coherent, and relevant, and she was cooperative. (Tr. 156). Dr. Soh diagnosed plaintiff with major depression and recommended individual counseling. (Tr. 157).

Dr. Teano ordered an X-ray and CT scan (computerized tomography) of plaintiff's lumbar spine to determine the cause of the back pain of which she complained. On June 23, 1995, x-rays of plaintiff's spine revealed no fractures, but showed that plaintiff had degenerative disc disease at L5 and S1.[14] (Tr. 171). On August 11, 1995, a CT scan revealed chronic disc degeneration at L5–S1 and transitional vertebra[15] at S1, but showed no disc herniations. (Tr. 161). Between October 11, 1995 and October 19, 1995, plaintiff received treatment at NovaCare Outpatient Rehabilitation. (Tr. 153–54). However, her treatment provider at NovaCare reported that she was discharged from the program prior to attaining her treatment goals because of her poor attendance. (Tr. 153).

A second Holter monitor evaluation was administered by Gurpreat S. Kochar, M.D. on February 10, 1995 which indicated symptomatic pulses bigeminy,[16] no sustained ventricular tachycardia,[17] no sinus pauses and normal sinus rhythm. (Tr. 134, 173).

12. Sinusitis is inflammation of the sinus. *Dorland's* at 1532. The sinus is a cavity or channel. *Id.* at 1530.

13. Psychotropic is usually applied to drugs that affect the mental state. *Dorland's* at 1384.

14. Degenerate joint disease, also called osteoarthritis is the most common form of arthritis, characterized by degenerative loss of articular cartilage, subchondral bony sclerosis, and cartilage and bone proliferation at the joint margins with subsequent osteophyte formation. Secondary synovial tissue inflammation is common. *The Merk Manual* (14th ed.1982) 1196–98.

15. Vertabra refers to any of the thirty-three bones of the spinal column. *Dorland's* at 1819.

16. Bigeminy refers to the occurrence of two beats of the pulse in rapid succession. *Dorland's* at 196.

17. Tachycardia refers to excessive rapidity in the action of the heart. *Dorland's* at 1655.

On June 25, 1996 Dr. Soh allegedly completed a Medical Assessment of Mental Ability To Do Work–Related Activities.[18] (Tr. 186–88). On the form, Dr. Soh opines that plaintiff has a poor ability to deal with the public, deal with work stresses, and understand, remember, and carry out complex job instructions. (Tr. 187). Dr. Soh does not cite to any treatment notes or objective tests to support her opinion.

On August 8, 1996, Dr. McCusker gave plaintiff the Wechsler Adult Intelligence Scale—Revised ("WAIS–R") test in which she scored a verbal IQ score of seventy-three (73), performance IQ score of seventy-two (72), and a full scale IQ score of seventy-two (72). (Tr. 199). Dr. McCusker concluded plaintiff's scores to be within the borderline range of normal intelligence. However, he also opined that it was likely that plaintiff's cognitive ability was higher than her scores indicated and that she was either deliberately or inadvertently under representing her abilities. (Tr. 201). He observed that plaintiff gave several inconsistent responses in which she often correctly answered difficult questions but missed easier ones, (Tr.201), and that there was a discrepancy between relatively capable clinical presentation and her very incapable assessment presentation. (Tr. 199). Based on his examination, Dr. McCusker determined that plaintiff was able to understand, retain and follow simple instructions, that her attention is sufficient to perform simple repetitive tasks, and that she had an adequate ability to maintain regular attendance, communicate clearly, initiate social contacts, get along with others, perform activities within a schedule, carry out instructions, attend to tasks from beginning to end, and perform at a consistent pace. (Tr. 201–205). Dr. McCusker determined that plaintiff could perform commonplace activities of daily living skills adequately and that she was able to manage her own funds. (Tr. 201).

On August 13, 1996, William Fowler, M.D., examined plaintiff's mental status. He found plaintiff to be pleasant and socially polite. (Tr. 209). The doctor's diagnostic impression was major depressive episode, single, without psychotic features with panic attacks. (Tr. 210). Dr. Fowler's prognosis was poor due to plaintiff's response to treatment over the past year, but stated that there were other anti-depressants which plaintiff had not yet tried. (Tr. 210). Dr. Fowler concluded that plaintiff had a good ability to follow work rules, relate to co-workers, interact with supervisors, and understand, remember, and carry out simple job instructions, and a fair ability to deal with the public, and use judgment. (Tr. 212–13). Dr. Fowler also opined that plaintiff had a poor ability to deal with work stresses, maintain attention and concentration, and understand, remember and carry out detailed, but not complex job instructions. (Tr. 213).

On May 16, 1997, Dr. Soh allegedly completed a Psychiatric Review Technique form in which Dr. Soh purportedly opined that plaintiff had a listing level affective disorder. (Tr. 216, 233–35). A number of the responses on the form appear to be altered.

A vocational expert testified at the administrative hearing ("VE"). (Tr. 56–63, 143–44). The A.L.J. asked the VE to consider an individual of plaintiff's age, education, and vocational background who could perform jobs requiring simple one and two step operations with repetitive tasks; who would need a job where she did not deal with the public; and would require a low stress job. (Tr. 57–58). The VE testified that a person with plaintiff's vocational profile and limitations could perform numerous unskilled jobs including janitor, maid, and packer. (Tr. 58–60).

After the A.L.J. issued his decision, the plaintiff submitted additional evidence to

---

**18.** There is a dispute as to whether the form was completed by Dr. Soh or Virginia Dreyer because an identical form, with identical handwriting and comments dated the same day was allegedly completed by Virginia Dreyer, plaintiff's social worker who worked under Dr. Soh at Life Guidance Services and signed by Dr. Soh. (Tr. 219).

the Appeals Council. (Tr. 236–37). All of the evidence relates to the time period prior to the A.L.J.'s decision. On September 25, 1996, Michael Goodkin, M.D., a cardiologist, examined plaintiff. (Tr. 258–59). Dr. Goodkin noted that plaintiff's echocardiogram revealed sinus rhythm with ventricular bigeminy, but was otherwise normal. (Tr. 258). Dr. Goodkin recommended that plaintiff exercise more and stated that he would try anti-arrhythmic drugs if exercise did not help her symptoms. (Tr. 259).

On October 31, 1996, plaintiff underwent an exercise stress test and echocardiogram. (Tr. 256–57). On the stress test, plaintiff was able to exercise to less than 85% of her predicted maximum heart rate without any chest pain. (Tr. 256). Plaintiff's echocardiogram revealed only mild mitral leaflet prolapse. (Tr. 257). Plaintiff had normal left ventricle size and function and there was no evidence of ischemic segmental wall dysfunction. (Tr. 257). The Appeals council determined that the evidence did not provide a basis for changing the A.L.J.'s decision.

### A. Opinions of Dr. Soh, Ms. Dreyer, and Dr. Fowler

Plaintiff first argues the A.L.J. failed to accord proper weight to (1) the medical assessment completed by Dr. Soh, plaintiff's treating psychiatrist; (2) an opinion of Virginia Dreyer, plaintiff's social worker therapist, and (3) a psychiatric consultative report performed by Dr. Fowler. *See* Pl.'s Br. at 8. This Court finds that substantial evidence supports the A.L.J.'s conclusion that plaintiff can perform the mental and physical demands of unskilled work. The basic mental demands of unskilled work include: (1) the ability to understand, carry out, and remember simple instructions; (2) the ability to respond appropriately to supervision, co-workers, and usual work situations; and (3) the ability to deal with changes in a routine work setting. Social Security Ruling ("SSR") 83–13 (Capability to do other work-The Medical Vocational Rules as a Framework for Evaluating Solely NonExertional Impairments); *see*

*also* 20 C.F.R. § 416.968(a). Here, consulting physician Dr. McCusker evaluated plaintiff twice, and both times found that she was able to perform the basic mental demands of unskilled work. Dr. McCusker concluded that plaintiff could understand, retain, and follow simple job instructions; perform simple, repetitive tasks; and tolerate day to day work pressures within a supportive environment. (Tr. 138). In 1996, Dr. McCusker again determined that plaintiff could understand, retain, and follow simple job instructions and perform simple, repetitive tasks. (Tr. 201). He also found that plaintiff had an adequate ability to maintain regular attendance, communicate clearly, initiate social contacts, get along with others, perform activities within a schedule, carry out instructions, attend to tasks from beginning to end, and perform at a consistent pace. (Tr. 202–05). Accordingly, there is substantial evidence in the record supporting the conclusion that plaintiff can perform unskilled work, if the A.L.J. properly gave little or no weight to contrary evidence.

### 1) Treating Psychiatrist Misook Soh, M.D, and Social Worker Virginia Dryer, M.S.W.

Plaintiff contends the A.L.J. failed to allocate significant weight to opinions rendered by treating physician, Dr. Soh, and social worker Virginia Dryer. See Pl.'s Br. at 8. According to the "treating physician doctrine," a treating physician's opinion is to be given significant weight. *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir.1984). Indeed, a treating physician's opinion is given controlling weight if it is well supported and not inconsistent with the other substantial evidence in the record. Thus, the opinion of a treating physician generally is entitled to more weight than that of a one-time consultive examiner. *Id.* This is especially true of a medical advisor or other non-examining physician. *Dorf v. Bowen*, 794 F.2d 896 (3d Cir.1986). In fact, the treating physician's opinion should not be rejected unless there is oth-

er medical evidence of record. *Franken-field v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987). The A.L.J. must "explain specific reasons for the weight given to the treating source opinion supported by clear evidence in the case record." 20 C.F.R. § 404.1527(d); *Brewster v. Heckler*, 786 F.2d 581, 585 (3rd Cir.1986) (A.L.J. must provide explanation for rejection of probative evidence which suggests contrary disposition); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir.1993) (A.L.J. must provide detailed explanation for conclusion).

■ As noted, the A.L.J. may give little or no weight to the treating physician's findings if (1) they are not well-supported by medically accepted clinical and laboratory diagnostic techniques or if (2) they are inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Santise v. Schweiker*, 676 F.2d 925, 932–33 (3d Cir. 1982); *Roberts v. Shalala*, 1994 WL 285039, at *1 (E.D.Pa. June 21, 1994) ("the A.L.J. can find that the opinions of treating physicians are not compelling when the history of conservative treatment is inconsistent with the [findings of disability] or when the opinion is conclusory").

In this case, the A.L.J. afforded the opinion of Dr. Soh and social worker Dryer of the Life Guidance Center little or no weight, explaining:

> Although Claimant testified that she is treated at the Life Guidance Center for her depression, the only records in file from the Life Guidance Center are an evaluation dated June 9, 1995, a treatment plan dated February 27, 1996 and the assessments submitted by claimants attorney post hearing. However, no treatment notes to substantiate the claimant's claim and the assessments are in the file. The assessments are copies prepared by a social worker and singed off by Dr. Soh and appear altered; also submitted is a copy of a Psychiatric Review Technique Form signed by Dr. Soh, which also appears altered. I note that the Life Guidance Center is under investigation for Medicaid Fraud ... Regarding "medical records" by Dr. Misook Soh, the claimant's treating psychiatrist at the Life Guidance Center, I find these reports are not credible. First, these "records" are not records. They are merely check off assessment forms which are not substantiated by any treatment records. The June 9, 1995 Psychiatric Review Technique Form of Dr. Soh (See Exhibits 22 and 25) is not a credible medical source. Dr. Soh's treatment notes have not been submitted for review to corroborate his opinion. The only records submitted containing any clinical data or evaluation information completed by Dr. Soh is the initial evaluation of the claimant in Exhibit 17. Interestingly, in this report, Dr. Soh notes that the claimant's memory was grossly intact, her appearance was appropriate, there was no abnormal psychomotor retardation, no abnormal motor behavior, her speech was clear, goal directed and there was no looseness of association. Her affect was also appropriate and she had a goal directed thought process. The only negative indications were an anxious and depressed mood and the claimant's statement that she "feels like people are looking at her." Dr. Soh diagnosed major depression, recurrent. An anxiety disorder was not diagnosed. This initial evaluation does not equate with the medical assessment of ability to do work related activities (Ex. 17, 18, 22, 25) discussed above (see Ex. 22 and 25). The only other information in the record regarding Dr. Soh's treatment of the claimant is a treatment plan which is of little value in this case. Furthermore, I note that the document copies in file have been altered. Therefore, Dr. Soh's opinion is afforded little weight in this decision. Social Security Ruling 96–2p and 20 C.F.R. 404.1527. Exhibits 22 and 18 are medical assessments completed by Virginia Dryer, the claimants social worker and these assessments are signed off by Dr. Soh. Although these

assessments note via a check off form that claimant's depression is of listing level, again, there are no treatment notes to substantiate this assessment. I further find that because Virginia Dryer is a therapist and not a clinical psychologist or psychiatrist, her opinion is not an opinion from an acceptable medical source. Therefore it is of little value and not afforded great weight. I also note that Dr. Soh's opinion and Ms. Dryer's opinion are contrary to claimant's own statements and testimony regarding what she is able to do in a typical day (e.g., arranges and keeps appointments and comes out of the house for her appointments and is able to maintain her household and her activities of daily living). Dryer infers that the claimant's depression is of listing level severity, yet she also admits that claimant has a fair ability to understand remember and carry out simple job instructions.(Ex. 17). Moreover, Dryer states that claimant is basically homebound but yet she is able to come out of her house to keep her appointments, had a neighbor take her to a consultive appointment. Therefore these assessments are inconsistent with the claimant's own statements and the record as a whole. These opinions are also inconsistent with Dr. McCusker's assessments which are based on his evaluation of the claimant which he has clearly explained.[19]

(Tr. 19, 21–22).

Thus, the A.L.J. properly accorded little weight to the opinions rendered by Dr. Soh and Ms. Dryer based on his determination that they were conclusory, inherently incredible as a result of the fact that the records clearly appear to be altered, and inconsistent with evidence provided by Dr. McCusker.[20] In addition, had Dr. Soh not signed Virginia Dreyer's opinion, it would not be entitled to deference because the regulations indicate that medical reports issued by social workers are not "acceptable medical sources," 20 C.F.R. § 416.913(a); *Lee v. Sullivan*, 945 F.2d 687, 691 (4th Cir.1991); *Rivera v. Heckler*, 598 F.Supp. 203, 206–7 (E.D.Pa.1984). Moreover, even assuming that Ms. Dryer were an acceptable medical source, her opinion is unsupported by treatment notes or objective findings.

As noted, it is well established that an A.L.J. may reject conclusions of a treating physician's opinion which is brief and conclusory in form with little in the way of clinical findings to support its conclusion. *Good v. Weinberger*, 389 F.Supp. 350, 355 (W.D.Pa.1975) (quoting *Bledsoe v. Richardson*, 469 F.2d 1288 (7th Cir.1972)). In addition, the Third Circuit has stated that a form report in which a physician only must check a box or fill in blanks is "weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993); *accord Parks v. Chater*, 1995 WL 505956 (E.D.Pa. 1995); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir.1986). Here, the A.L.J. not only adequately explained why he rejected the opinions, citing an acceptable basis for according less weight to the opinions, but he also referred to other evidence in the record that supports his conclusion to the contrary.

**19.** In *Allen v. Bowen*, 881 F.2d 37, 42 (3d Cir.1989), the Third Circuit reaffirmed the principle that "where a report of a treating physician conflicts with that of a consulting physician, the A.L.J. must explain on the record the reasons for rejecting the opinion of the treating physician." *Allen*, 881 F.2d at 41.

**20.** In particular, the form allegedly completed by Dr. Soh on May 16, 1997, (Tr. 216–218), was obviously altered. For example, it appears that Dr. Soh initially determined that plaintiff had a non severe mental impairment.

(Tr. 216). Moreover, in the section entitled "degree of limitation," it seems that Dr. Soh originally stated that plaintiff had a lesser degree of limitation then is currently reflected. (Tr. 218). Plaintiff submitted two Medical Assessment of Ability to Do Work Related Activities forms-one allegedly completed by Dr.Soh, (Tr. 186), and one allegedly completed by Ms. Dyer, (Tr. 218). Despite the contention that two different treatment providers completed these forms, both of the forms are printed in identical handwriting and report identical findings.

In light of the fact that the A.L.J. engaged in a reasoned analysis of the relevant evidence in the administrative record, his rejection of the opinion of plaintiff's treating psychiatrist was proper. It is not this court's task to reweigh each piece of evidence, thereby making superfluous the A.L.J.'s duties. Rather, it is our mandate to ensure that the A.L.J. does not reach decisions in an arbitrary manner. No such arbitrariness is apparent from the record, as the A.L.J. weighed the evidence and explained his conclusions. Where, as here, the opinion of a treating physician conflicts with the conclusion reached by the A.L.J., and the A.L.J. had made clear on the record his reasons for rejecting the opinion and has pointed to other evidence in the record to support the conclusion, his findings are supported by substantial evidence.[21]

## 2) Consultive Examiner Dr. William Fowler, M.D.

Plaintiff also contends that the A.L.J. failed to accord proper weight to a report issued by Dr. Fowler on August 14, 1996. The A.L.J. reviewed the reports of both Dr. McCusker and Dr. Fowler and found Dr. McCusker's to warrant more weight.

The A.L.J. found that, while Dr. McCusker reported that he felt plaintiff intentionally portrayed herself as being less capable than she actually was, Dr. Fowler failed to account for that premise. The A.L.J. determined that plaintiff's "testimony and her presentation to Dr. Fowler [lacked] credibility and [was] motivated by the claimant's desire to obtain benefits" and also found Dr. Fowler's report to be internally inconsistent. (Tr. 20–21). The A.L.J. explained that, "Dr. Fowler's opinion that the claimant has poor ability to concentrate due to her anxiety is inconsistent with his good assessment of her ability to understand, remember, and carry out *simple* job instructions." (Tr. 20, 213). Faced with conflicting medical evidence, the A.L.J. adequately evaluated and weighed the evidence. (Tr. 20–21). The A.L.J. adequately explained in the record his reasons for rejecting and discrediting Dr. Fowler's report to the extent that it was inconsistent with his conclusions. Substantial evidence supports his findings. Therefore this court will not recommend that his decision be reversed or remanded.

## B. Nonsevere Back Impairment

■ Substantial evidence also supports the A.L.J.'s conclusion, at step two, that

**21.** Plaintiff claims the A.L.J. had the duty to develop the record and attempt to obtain treatment notes from plaintiff's treating physician Dr. Soh. The treatment notes would allegedly support the Psychiatric Review Technique form and add credibility to Dr. Soh's opinion. Pl.'s Br. at 9 n.13. Plaintiff is entitled to a full and fair hearing under the regulations of the Social Security Administration. *Maniaci v. Apfel*, 27 F.Supp.2d 554, 556 (E.D.Pa.1998). The A.L.J. also has an affirmative duty to develop the record. *Id.* This duty arises from 20 C.F.R. § 404.1512, which mandates a review of the claimant's complete medical record before a determination of benefits eligibility is made. 20 C.F.R. § 404.1512(d)-(f). The A.L.J. has a duty to ensure that the evidence is sufficient to make a benefits determination. *Id.* To determine whether remand is appropriate, the court must examine the record to determine if the A.L.J. met her obligation to develop the record adequately. *Id.* When, as here, a plaintiff is represented by counsel at the administrative level, the A.L.J. is entitled to assume that

plaintiff is making the strongest case possible for benefits. *Glenn v. Secretary of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). Nevertheless, the instant A.L.J. left the record open for two weeks after the administrative hearing to give plaintiff extra time to submit the treatment notes. We find that the medical record before the A.L.J. contained adequate information regarding plaintiff's mental condition. The A.L.J.'s failure to obtain additional evidence as to plaintiff's mental impairment was not a failure to fulfill her duty to develop the record under 20 C.F.R. § 404.1512(d)-(f); 416.912. Accordingly, the Court will not recommend that the A.L.J.'s decision be remanded based on plaintiff's allegations to the contrary.

We note that, even if these treatment notes had been obtained, the outcome of this hearing would not have changed. The fact that the Psychiatric Review Technique form was not supported by treatment notes was only one of several reasons the A.L.J. gave for discrediting Dr. Soh's opinion.

plaintiff does not suffer from a severe back impairment. With regard to plaintiff's alleged back impairment, the A.L.J. observed that:

> Although the claimant initially alleged that she had arthritis in her back, she did not testify to any pain or limitations due to arthritis nor did she submit any medical records to show that she has had any inconsistent treatment for any musculoskeletal impairment. In fact the medical records merely consist of a Ct scan and an x-ray of the lumbosacral spine which shows disc degeneration in August 1995 and no herniation (See Exhibit 17). Apparently, claimant was also sent for physical therapy but did not attend (See Ex. 17 pp. 9–10). An October 3, 1995 note states that the claimant was taking Naprosyn with some relief of her pain on and off. I find that if this purported arthritis had any significant impact on claimant's functional ability, she, more than likely, would have followed through with physical therapy or other treatment. Therefore, I find that claimant does not have a severe musculoskeletal impairment.

(Tr. 23–24).

Step two of the five-step review process "determines whether the claimant has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140–41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The step two severity determination is based solely on medical factors affecting a claimant's ability to perform basic work activities, and does not include consideration of vocational factors such as age, education, and work experience, *Id.* at 141, 107 S.Ct. 2287 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). It is permissible for the A.L.J. to deny benefits at step two by resorting solely to the medical evidence. *See Id.* at 144, 107 S.Ct. 2287 (reversing appeals court holding that Congress did not intend "to permit findings of non-disability based on medical factors alone"). At step two, "the

claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities … " *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Inherent in this determination is some evaluation of the impact of the impairment on the claimant's ability to do basic work activity. *See* SSR 85–28; 1985 WL 56856 (S.S.A.), at *4. The latter is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples of basic work activities include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting. *Id.* Thus, the plaintiff must show more than the mere presence of a condition or ailment. He or she must show that the condition results in some functional limitation on the ability to do basic work activity. Even though the required showing for step two of the Secretary's evaluation process is de minimis, *see Williams*, 844 F.2d at 751, plaintiff has failed to make that showing. Plaintiff asserts that she is able to perform all necessary household chores including cooking, cleaning, vacuuming, shopping, laundry, and dusting and can ride public transportation and visit her parents. (Tr. 49, 85–87). She had no medical evidence of physical impairment in her record other than an x-ray and CT scan that showed some degenerative changes in her lumbar spine. (Tr. 161, 171). However, there is no evidence in the record that these changes caused any functional limitations that significantly limited plaintiff's ability to do work activities. Dr. Teano's exam was unremarkable other than his opinion that plaintiff was experiencing chronic disc degeneration in her lumbar spine and cervical strain. (Tr. 161,

171, 177). There is no evidence in the record, that either of these conditions limit plaintiff's functional ability do to basic work activities. Instead, the record reveals that Dr. Teano found plaintiff's upper extremity sensation to be intact and her strength to be symmetric bilaterally. (Tr. 131). The only treatment plaintiff received for her back was a prescription for Naprosyn, a non-narcotic pain reliever, and some physical therapy that plaintiff failed to attend after two weeks. There is no evidence in the record that any physician has ever told plaintiff to restrict any of her activities because of her alleged back impairment. Thus, because plaintiff has not proven that she has an impairment so severe as to "significantly limit [her] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1521(a), 416.921(a), the A.L.J.'s finding of not disabled is supported by substantial evidence.

## C. Hypothetical Presented To The Vocational Expert

Plaintiff contends that the A.L.J. relied on a hypothetical question that did not reflect all impairments supported by the record. We disagree.

It is common at administrative hearings for the A.L.J. to present a vocational expert with a hypothetical to determine whether the plaintiff is capable of performing substantial gainful work activity. The A.L.J. will tailor the hypothetical to simulate the plaintiff's own limitations and abilities, and then ask whether a suitable job exists for the plaintiff in the national economy. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984). In order for the answer to be considered substantial evidence, all of the plaintiff's impairments supported in the record must be reflected in the hypothetical. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987). The A.L.J. presented the VE with the following hypothetical: (1) a person forty-eight years old, (2) literate with at least a ninth grade education in special education classes, (3) no work history, (4) could perform a simple job requiring a one or two step operation of simple repetitive tasks, and which did not deal with the public and was low stress. (Tr. 57).[22] Plaintiff asserts the A.L.J.'s hypothetical failed to take into consideration (1) the anxiety and depression limitations enumerated by Dr. Soh and Dr. Fowler, and (2) plaintiff's degenerative disc disease in her lower back. Pl.'s Br. at 12. Because the A.L.J. properly evaluated each of plaintiff's alleged impairments, the hypothetical posed to the vocational expert was not deficient and the expert's answer to it can be considered substantial evidence.[23]

## D. Listing 12.05(C): Mental Retardation

Plaintiff contends that she meets or equals[24] the requirements of Listing

---

**22.** Later in the hearing, the A.L.J. re-examined the vocational expert relying on Dr. Soh's evaluation. (Tr. 61). The A.L.J. added Dr. Soh's disputed limitations to the hypothetical, asking what affect a poor ability to deal with the public, a poor ability to deal with work stresses, and a poor ability to maintain attention, and to understand complex and detailed instructions would have on plaintiff's work ability. (Tr. 61). The vocational expert expressed that these limitations, if true would prevent plaintiff from performing the positions identified by the vocational expert. (Tr. 62).

**23.** The plaintiff also alleges, in a footnote and without citing supporting case law, that, by failing to specifically recite an exertional limitation in the hypothetical, the A.L.J. implicitly directed the VE to assume that plaintiff could perform very heavy work which would re-

quire lifting one hundred (100) pounds. She contends that it is unreasonable to conclude that a forty-eight (48) year old women could perform heavy and very heavy work. (Pl's. Br. at 12, n.19). Although the A.L.J. failed to use an exertional category in her hypothetical to the VE, he specifically directed the VE to consider plaintiff's age. (Tr. 57). Upon considering all relevant factors including plaintiff's age, the VE found that the plaintiff could perform only light and medium exertional level work. (Tr. 58–60). Accordingly, we cannot conclude that the A.L.J. improperly directed the VE to assume that plaintiff could perform very heavy work and thereby failed to provide for plaintiff's age and any exertional limitation in his hypothetical question.

**24.** In order to qualify for benefits the claimant must show that her unlisted impairment,

12.05(C), entitled "Mental Retardation and Autism." The third step of the five step sequential process set forth in 20 C.F.R. § 416.920 is whether an applicant's "severe impairment(s) meets or equals the severity of any impairment listed" in the first appendix to 20 C.F.R. Part 4, subpt. P, 20 C.F.R. § 416.920(d). If an impairment does meet or equal the severity of a listed impairment, the claimant is approved for SSI. One of the listed impairments is mental retardation.

An applicant claiming disability due to mental retardation must show "a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." 20 C.F.R. pt. 404, subpt. P, app.1, § 12.05. The regulation further notes that "the required level of severity for this disorder is met when the requirements in [12.05 subheadings] A, B, C, or D are satisfied." *Id.* The subheading relevant here, 12.05(c), requires showing "A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05(c) ("Listing 12.05(c)"). In sum, then, the regulations require claimant to prove (1) an I.Q. between 60 and 70; and (2) a physical or other mental impairment imposing additional and significant work-related limitations of function. It is also possible that plaintiff must prove manifestation of the retardation prior to the claimant's twenty second birthday.

The record indicates that Peter J. McCusker, Ed.D., administered the Wechsler Adult Intelligence Scale–Revised and reported that the plaintiff had a full scale I.Q. of 72, a verbal I.Q. of 73 and a performance I.Q. of 72. The regulations direct that in determining whether a disability exists, one should use the lowest of these scores, in this case plaintiff's performance I.Q. of 72, in conjunction with § 12.05. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00(D) (enumerating the documentation required for demonstrating the presence of a mental disorder).

Although the parties do not dispute that plaintiff has a reported test score of 72, they dispute whether the I.Q. tests have a margin of error of plus or minus five points.[25] Given such a margin of error, plaintiff's I.Q.-tested at 72–would be considered to be in actuality somewhere between 67 to 77 and she would meet the score criteria of § 12.05.

The A.L.J., in this case, made a specific finding as to whether plaintiff's I.Q. fell within the range of Listing 12.05(c) and found that application of the five point margin of error was unwarranted:

> Regarding the claimant's I.Q. test, while Dr. McCusker has indicated that the claimant probably has a greater capability for higher scores, based upon her educational achievements (a tenth grade education purportedly in special education although this is not substantiated by the records) and giving the claimant the benefit of doubt, I find that the claimant's I.Q. scores would probably still be in the 70's borderline intelligence range. However, I also caution that Dr. Fowler noted that the claimant's fund of information and intelligence level appeared grossly average. This finding of Dr. Fowler would corroborate Dr. McCusker's opinion as to the claimant's inadequate presentation. (Tr. 21).

or combination of impairments, is equivalent to a listed impairment, and must present medical findings equal in severity to all the criteria for the most similar listed impairment. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir.1992). The test of equivalence does not permit the A.L.J. to substitute a rough standard or reduce the threshold, but rather, requires that medical findings equal in severity and duration form the basis for a determination of equivalence.

**25.** "I.Q. scores are thought to have an error of measurement of approximately five points." *Halsted v. Shalala*, 862 F.Supp. 86, 90 (W.D.Pa.1994) (citing *Diagnostic and Statistical Manual of Mental Disorders*, 28 (3d Ed.Rev.1987)).

■ The regulations do not explicitly mandate the consideration of standard errors of measurement in determining whether an individual satisfies a limitation criteria. Nevertheless, one court in this district held that I.Q. test scores are subject to such a margin of error and determined that the lowest score of the range should be used in determining whether a mental disorder exists. *Hampton v. Apfel,* 1999 WL 46614, at *2 (E.D.Pa. January 6, 1999) (holding that the plaintiff's "I.Q. of 72, which falls somewhere between 67 and 77, should be read as 67 for the purpose of determining whether a mental disorder exists"). In so concluding, the court reasoned that "it is reasonable to apply the same underlying rationale [as in 12.00(D) ]-error on the side of the claimant-in the context of testing error as well." In support of its decision, the Court cited the Diagnostic and Statistical Manual of Mental Disorders, 39, 47 (4th ed.1994), the Program Operation Manual System § DI 24515.056D.2,[26] and a Western District decision, *Halsted v. Shalala,* 862 F.Supp. 86 (W.D.Pa.1994). Other district courts have split over this issue. *See Halsted v. Shalala,* 862 F.Supp. 86, 89–90 (W.D.Pa.1994) (finding that an I.Q. of 71 was within the range of § 12.05(C)); *Bendt v. Chater,* 940 F.Supp. 1427, 1431 (S.D.Iowa) (I.Q. of 75 not within range of § 12.05(C)); *Young v. Shalala,* 1995 WL 904826 (W.D.Mo. May 31, 1995) (finding that an IQ of 71 was within the range of 12.05(C)); *Lawson v. Apfel,* 46 F.Supp.2d 941, 946–47 (W.D.Mo. 1998) (finding that I.Q. of 71 was not within range of § 12.05(C)); *see also Cockerham v. Sullivan,* 895 F.2d 492, 495 (8th Cir.1990) (holding that an A.L.J.'s finding that a claimant's I.Q. score of 71 was not within the range of 60–69 was supported by substantial evidence on the record as a whole); *Anderson v. Sullivan,* 925 F.2d 220, 222 (7th Cir.1991) (standard error range should not be factored into I.Q. score).

Obviously, this Court is not bound by any of these decisions. However, we find the reasoning in *Bendt,* and its reliance on *Cockerham v. Sullivan,* 895 F.2d 492, 495 (8th Cir.1990), to be most persuasive. *Ellison v. Sullivan,* 929 F.2d 534 (10th Cir. 1990) (holding same). In *Bendt,* the district court noted that "[i]ncorporating a 5 point measurement error into a claimant's I.Q. test results would effectively expand the requisite I.Q. under listing 12.05(C) from test scores of 60 to 70 to test scores of 60 to 75." *Bendt,* 940 F.Supp. at 1431. The Court concluded that this would alter the range of I.Q.'s which satisfy the Listing of Impairments for Mental Retardation and Autism in contradiction of the federal regulations interpreting the Act. Consequently, this court finds that the A.L.J.'s finding that Plaintiff did not qualify under § 12.05(c) is supported by substantial evidence on the record as a whole.

■ Moreover, substantial evidence supports that A.L.J.'s conclusion that plaintiff's score does not meet the first requirement of 12.05(c). The question of whether a claimant meets or equals a listed impairment is strictly a medical determination. 20 C.F.R. § 404.1526(b), 416.926(b). In Dr. McCusker's opinion plaintiff "quite likely is more capable than her scores would suggest." (Tr. 197, 201). Dr. McCusker wrote in his conclusion:

When tested, this claimant was lighthearted about and emphasizing her deficits. She apologized and rationalized her successes. She had quite a few "near misses." On several occasions she ruined correct responses. For all of these reasons, it is my clinical impression that she was either deliberately or inadvertently presenting herself as less capable than she is. (Tr. 197, 201).

In addition, the reliability of plaintiff's scores is supported by plaintiff's educational background. Also note that Dr. Fowler documented that the claimant's

**26.** The Programs Operations Manual System ("POMS") POMS is the authorized means for issuing official Social Security policy and operating instructions at the initial and reconsideration level. These regulations do not have the force of law. *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981).

fund of information and intelligence level appeared grossly average. Again this finding of Dr. Fowler corroborates Dr. McCusker's opinion as to the claimant's inadequate presentation. (Tr. 21).

In accordance with the plain language of the regulations and in view of the medical opinion evidence contained in the record that supports the validity and accuracy of plaintiff's I.Q. scores, the A.L.J.'s decision that plaintiff's scores do not meet or equal Listing 12.05(c) is supported by substantial evidence.

We also note that plaintiff cannot meet or equal another requirement of Listing 12.05. In this regard, we first determine whether plaintiff was required to show that her mental retardation manifested itself prior to her twenty second birthday, and, if so, whether she made such a showing. In *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3d Cir.1992), the Third Circuit held that claimants have the burden of producing evidence that their deficient intellectual functioning initially manifested itself during the developmental period (prior to their twenty second birthday) in order to meet Listing 12.05 and that a post-developmental period I.Q. score is insufficient to establish that requirement. See also *Clark v. Apfel*, 141 F.3d 1253 (8th Cir.1998) (citing *Williams*). However, a more recent decision in this district concluded, without citing the Third Circuit decision in *Williams*, that claimants are entitled to a rebuttable presumption of manifestation during the developmental period upon producing a low I.Q. score. *Hampton v. Apfel*, 1999 WL 46614 (E.D.Pa. January 6, 1999) (holding that "a low [post developmental period] I.Q. test raises a presumption of manifestation during the developmental period"). That presumption is rebutted by evidence of a deterioration of mental functioning following that period. *Id.* This court is bound by the Third Circuit's decision. We merely note that, because plaintiff has only submitted her post-developmental period I.Q. test as evidence that her deficient intellectual functioning existed prior to her twenty-second birthday and has not provided any

other evidence such as school records, she would not meet or equal Listing 12.05 under *Williams*.

Therefore, I make the following:

### RECOMMENDATION

AND NOW this ____ day of July, 1999 it is RESPECTFULLY RECOMMENDED that plaintiff's Motion for Summary Judgment be denied and the defendant's Motion for Summary Judgment be granted.

July 27, 1999.

### ORDER

AND NOW this Day of, 1999, upon careful consideration of the Report and Recommendation filed by United States Magistrate Judge Peter B. Scuderi, and upon independent review of the Cross Motions for Summary Judgment filed by the parties, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED.
2. Plaintiff's Motion for Summary Judgment is DENIED.
3. Defendant's Motion for Summary Judgment is GRANTED.
4. The Commissioner's decision is AFFIRMED.